[No. S004764. Crim. No. 26404. Dec. 9, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL ANGEL BACIGALUPO, Defendant and Appellant.

112

## COUNSEL

Cliff Gardner and Melissa Johnson, under appointments by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Dane R.

Gillette and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—This is an automatic appeal from a judgment of death. (Pen. Code, § 1239, subd. (b); unless otherwise indicated all further statutory references are to the Penal Code.) A jury convicted defendant Miguel Angel Bacigalupo of two counts of first degree murder (§ 187) and two counts of robbery (§ 211). The jury found to be true allegations of a multiple-murder special circumstance (§ 190.2, subd. (a)(3)) and, as to each count of murder, a robbery-murder special circumstance (§ 190.2, subd. (a)(17)(i)). The jury also found that defendant had personally used a firearm in committing the murders and robberies. (§ 12022.5.)

Defendant waived the right to a jury trial on a charge of possession of a concealed firearm by an ex-felon (§ 12021) and on two allegations that he had suffered prior felony convictions. After hearing testimony, the trial court convicted defendant of the charge, found one prior felony allegation to be not true, but sustained the allegation that defendant previously had been convicted and sentenced to prison in New York for selling cocaine (§ 667.5, subd. (b)).

We affirm the judgment in its entirety.

## I. FACTS

### A. *Guilt Phase Evidence*

Orestes Guerrero, a Peruvian immigrant, owned a jewelry store in San Jose. Defendant's mother, Dina Padilla Golden, who is also from Peru, met Orestes through friends in the Peruvian community in early 1983. When defendant's mother learned that defendant was moving from New York to Palo Alto, she asked Guerrero to give him a job in the store and to train him in the jewelry trade.

In October 1983, defendant moved from New York to California, where he lived with his mother and stepfather in their Palo Alto apartment. He found work as a dishwasher at a restaurant, but soon left for another job. On the morning of December 29, 1983, defendant told his mother and stepfather he had quit this second job.

Carlos Valdiviezo lived in Orestes Guerrero's jewelry store. He had left Peru and entered the United States illegally with Orestes's brother, Jose Luis

Guerrero. On the morning of December 28, 1983, Valdiviezo saw defendant in the jewelry store with Orestes and Jose Guerrero. Valdiviezo heard Orestes say that defendant was the son of a Peruvian woman and that he had been recommended to work in the jewelry store.[1]

The next morning, Valdiviezo and Orestes Guerrero put jewelry into the jewelry cases in the front area of the store. The two men then left the store to pick up some diamonds; they returned shortly before noon. Half an hour later, defendant arrived at the jewelry store; he was given the task of operating a silverthreading machine used in making jewelry. While assisting defendant, who seemed to be having trouble operating the machine, Valdiviezo noticed that defendant was quite nervous. Valdiviezo then left the jewelry store to change the spark plugs in Orestes Guerrero's car.

When Valdiviezo returned an hour later, defendant pointed a handgun at him and ordered him to lie down. Defendant put the gun next to Valdiviezo's head and tried to shoot, but the gun jammed. Valdiviezo ran and hid in the store's bathroom.

About 20 minutes later, Valdiviezo left his hiding place after he heard someone leave through the front door of the store. Valdiviezo discovered the dead bodies of Orestes and Jose Guerrero; both had been shot. The jewelry cases at the front of the store were all empty.

Valdiviezo immediately contacted Orestes Guerrero's wife and told her what had happened. Because of his fear of deportation, he did not talk with the police until several hours after the killings.

Later that evening, the police arrested defendant at his mother and stepfather's apartment in Palo Alto, just as his stepfather was preparing to take defendant to the airport. Defendant's suitcases contained the jewelry taken from Orestes Guerrero's jewelry store. After advisement and waiver of his constitutional rights, defendant admitted killing the Guerrero brothers, but claimed he had done so under threat of death by the Colombian Mafia.

Defendant presented no evidence at the guilt phase of the trial.

## B. *Penalty Phase Evidence*

As evidence of criminal activity by the defendant involving force or violence (§ 190.3, factor (b)) the prosecution presented testimony from two

---

[1] Orestes Guerrero called defendant "Miguel Padilla," another name by which defendant was known. During trial, witnesses referred to defendant both as "Miguel Padilla" and as "Miguel Bacigalupo."

witnesses, Maggie Granell and Dominic DiGregorio, about defendant's 1978 participation in an armed robbery of a grocery store and the subsequent shootout with police in New York. In addition, the prosecution offered evidence that defendant had suffered two prior felony convictions (§ 190.3, factor (c)) for sale of a controlled substance and possession of a firearm in New York.

In mitigation, the defense presented the testimony of defendant's mother and two other witnesses (a minister and a psychologist), both of whom had met with defendant in jail after his arrest on this case.

Defendant's mother testified that defendant was the youngest of three children. His parents separated when he was seven years old; shortly thereafter, defendant and his mother moved from Peru to Mexico City. Eventually they came to New York City where defendant's mother worked long hours and left defendant unattended. As a teenager, defendant visited his sister in Spain. After the two had a quarrel, defendant spent one year in a Spanish orphanage until his return to the United States could be arranged. In 1980, when defendant was in prison in New York, his older brother was killed during a robbery.

Reverend Richard Lyon testified that he had met with defendant about a dozen times since the arrest in this case. He showed the jury some religious drawings that defendant had made for him, and said that defendant was attempting to gain personal insight through religion.

Based on his examination of defendant, Dr. John Brady, a clinical psychologist, concluded that defendant suffered from chronic depression. He based that conclusion on defendant's conduct, which included attempts at self-mutilation. In his view, younger offenders such as defendant might be rehabilitated through the penal system. On cross-examination, the prosecutor questioned Dr. Brady about defendant's disciplinary problems while in prison in New York. Brady attributed those problems, which included assaultive conduct, to defendant's efforts to protect himself.

## II. GUILT PHASE ISSUES

### A. *Validity of the Warrantless Arrest and Search*

Defendant contends that the trial court committed reversible error in admitting evidence obtained as the result of his warrantless arrest.

The relevant facts are as follows: At 8:30 p.m. on the day of the killings, based on information provided by Valdiviezo and members of the Guerrero

family, officers of the San Jose and Palo Alto police departments arrived at the apartment defendant shared with his mother and stepfather to arrest him for the murders of the Guerrero brothers a few hours earlier. Because the murders occurred in San Jose, but defendant lived in Palo Alto, officers of both the San Jose and Palo Alto police departments participated in the arrest.

San Jose homicide Detective James Smith was in charge. He had no arrest or search warrant. He did not learn defendant's identity and address until after 6:30 p.m., and believed that the extra time involved in obtaining a warrant after regular working hours increased the likelihood that defendant would leave California or dispose of evidence. He did consider obtaining a telephonic warrant (see §§ 1526, subd. (b), 1528, subd. (b)), but concluded that it would be too time consuming and too "risky" under the circumstances.

Detective Smith and two other officers went to the front door of the apartment. Smith knocked on the door and defendant's mother, Mrs. Golden, answered. Smith asked if defendant was at home; Mrs. Golden answered, "Yes," and stepped back. As she did so, the officers entered the apartment.

Officer Moises Reyes ordered defendant to come out of a locked bathroom, arrested him, took him outside, and had him sit in the back of a police car. Reyes then advised defendant of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436, 479 [16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 10 A.L.R.3d 974]. After waiving his rights, defendant admitted killing the two Guerrero brothers.

Defendant's stepfather, Don Golden, gave written authorization for the officers to search the apartment. Golden removed from his car suitcases belonging to defendant and handed them to the police.

On the way to the police station, defendant led Officer Reyes to some bushes near Orestes Guerrero's jewelry store where defendant had abandoned the gun used in the killings. At the station, defendant signed a written authorization for a search of his suitcases. They contained jewelry taken from the display cases in Orestes Guerrero's store.

Before trial, defendant moved under section 1538.5 to suppress the jewelry, the empty jewelry boxes, the gun used in the killings, and the statements he had made to the police (see *People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 733 [125 Cal.Rptr. 798, 542 P.2d 1390]), claiming that the evidence was the product of his unlawful arrest without a warrant. The prosecution argued that the arrest was valid based on either of two exceptions to the warrant requirement: exigent circumstances or the consent of

defendant's mother to the officers' entry into the apartment. The trial court agreed there were exigent circumstances and denied defendant's suppression motion. The court also determined that the written consents to search by defendant and his stepfather were voluntarily given. We find no error in these rulings.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." ■ "[T]he arrest of a person is 'quintessentially a seizure' " within the meaning of the Fourth Amendment. (*Payton* v. *New York* (1980) 445 U.S. 573, 585 [63 L.Ed.2d 639, 650, 100 S.Ct. 1371], citation omitted.) Although a warrantless arrest in a public place does not offend the Fourth Amendment so long as the arresting officer has reasonable cause to believe that the person to be arrested has committed a felony (*United States* v. *Watson* (1976) 423 U.S. 411, 422 [46 L.Ed.2d 598, 608, 96 S.Ct. 820]; see § 836, subd. 3; *People* v. *Campa* (1984) 36 Cal.3d 870, 878 [206 Cal.Rptr. 114, 686 P.2d 634]), an arrest in a person's home requires an arrest warrant. (*Payton* v. *New York, supra,* at pp. 589-590 [63 L.Ed.2d at p. 653]; *People* v. *Ramey* (1976) 16 Cal.3d 263, 275 [127 Cal.Rptr. 629, 545 P.2d 1333].) The warrant requirement is excused, however, when exigent circumstances require prompt action by the police "to prevent imminent danger to life . . . or to forestall the imminent escape of a suspect or destruction of evidence." (16 Cal.3d at p. 276.)

Although the United States Supreme Court has recognized exigent circumstances as an exception to the Fourth Amendment's warrant requirement (*Payton* v. *New York, supra,* 445 U.S. at pp. 588-590 [63 L.Ed.2d at pp. 652-653]), it has yet to delineate the precise contours of that exception. The court has, however, described an in bank opinion by a federal appeals court, *Dorman* v. *United States* (D.C. Cir. 1970) 435 F.2d 385, as "a leading federal case defining exigent circumstances . . . ." (*Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 751, 752 [80 L.Ed.2d 732, 744, 104 S.Ct. 2091].)

■ To determine whether exigent circumstances support the decision to make an arrest without first obtaining a warrant, *Dorman* v. *United States, supra,* 435 F.2d at pages 392-393, sets out the following pertinent factors: the gravity of the offense involved; whether the subject of the arrest is reasonably believed to be armed; whether probable cause is clear; whether the suspect is likely to be found on the premises entered; and the likelihood that the suspect will escape if not promptly arrested. We recently applied the *Dorman* factors in *People* v. *Williams* (1989) 48 Cal.3d 1112, 1139 [259 Cal.Rptr. 473, 774 P.2d 146].

■ Here, application of the factors specified in *Dorman* v. *United States, supra,* 435 F.2d at pages 392-393, establishes the existence of exigent

circumstances, thus justifying the warrantless arrest of defendant in his home. Detective Smith knew that two men had just been shot to death. Information from eyewitness Valdiviezo and from other members of the Peruvian community provided the police with strong probable cause to believe that defendant was the killer, that he was likely to be armed, and that he would be at the apartment he shared with his mother and stepfather. The police also knew that defendant was a Peruvian national who had recently come to California from New York, and that he was aware that Valdiviezo could identify him, which increased the likelihood that defendant would flee. These circumstances, when considered together, were "more than sufficiently urgent to justify" the warrantless arrest of defendant at home. (*People v. Williams, supra,* 48 Cal.3d 1112, 1139.) Accordingly, the trial court's admission of evidence resulting from that arrest was proper.

Because of our conclusion that the warrantless arrest of defendant was valid, we need not address the prosecution's alternative theory of consent.

B. *Failure to Disclose Confidential Informant*

In the trial court, defendant moved for disclosure of the identity of a confidential informant. The prosecution opposed the motion, asserting the privilege against disclosure set out in Evidence Code section 1041. The trial court held an in camera hearing, and after hearing evidence denied the defense motion.

Defendant contends that the informant could have provided material evidence beneficial to the defense (see *People v. Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1]), and that therefore the trial court erred in denying disclosure. After a careful review of the sealed transcript of the in camera hearing held by the trial court, we reject defendant's claim.

C. *Alleged Instructional Errors*

1. *Requested Instructions on Duress*

Immediately after his arrest, defendant talked to Officer Reyes after waiving his constitutional rights under *Miranda v. Arizona, supra,* 384 U.S. 436, 479 [16 L.Ed.2d 694, 726]. At first, defendant denied his involvement in the jewelry store incident, but later he admitted killing the Guerrero brothers. Defendant made vague reference to a group he called the "Colombian Mafia,"[2] which he said had "contracted" him to commit the double murder and threatened to kill him and his family if he did not do so.

---

[2]During trial, the group was also referred to as the "Peruvian Mafia."

Defendant said he was to turn the stolen jewelry over to the Colombian Mafia in New York.

At trial, Officer Reyes testified to defendant's admissions made about the killings and defendant's comments about the Colombian Mafia. Defendant did not testify.

The prosecution offered alternative theories to support defendant's guilt of first degree murder: the killings were premeditated and deliberate, and they occurred in the course of a robbery. (§ 189.) The trial court instructed the jury on both of these theories. At the prosecution's request, the court also instructed the jury on the defense of duress as defined in CALJIC No. 4.40 (4th ed. 1979, bound vol.; unless otherwise indicated, all further references to CALJIC are to this edition), and it gave a modified version of CALJIC No. 4.41,[3] informing the jury that duress was not a defense to a charge of homicide.

The defense acknowledged that duress would not be a complete defense to murder, but argued that it should reduce criminal culpability by negating the ability to premeditate and deliberate. Accordingly, defense counsel requested the court to instruct the jury on this theory of duress and to give an additional instruction on manslaughter. Counsel also asked for permission to argue this theory to the jury. The court denied each of these requests.

 Defendant contends that the trial court erred in refusing to instruct the jury that duress could negate the elements of premeditation and deliberation, and that the court's ruling denied him the effective assistance of counsel by improperly limiting counsel's argument to the jury. Defendant posits that the threats of harm would negate the mental states necessary for first degree murder, thereby reducing his criminal culpability either to second degree murder (see Lafave & Scott, Criminal Law (1st ed. 1972) § 49, p. 379 [suggesting that duress may eliminate the ability to deliberate or premeditate]) or to manslaughter (Lafave & Scott, Criminal Law (2d ed. 1986) § 7.11(c), pp. 666-667 [duress may negate malice thereby reducing murder to manslaughter]). As we shall discuss, the facts of this case do not support the instruction that defendant requested.

---

[3]The court instructed the jury: "A person is not guilty of a crime when he engages in conduct, otherwise criminal, when acting under threats and menaces under the following circumstances: Where the threats and menaces are such that they would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged, and if such person then believed that his life would be so endangered. [¶] This rule does not apply to threats, menaces, and fear of future danger to his life." (CALJIC No. 4.40.)

In addition, the court gave this instruction: "It is not a defense to a charge of homicide that the defendant committed the act or made the omission charged under threats or menaces of immediate death or bodily harm." (Modified version of CALJIC No. 4.41.)

A trial court need only give those requested instructions supported by evidence that is substantial. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) Central to a defense of duress is the immediacy of the threat or menace on which the defense is premised. (*People* v. *Quinlan* (1970) 8 Cal.App.3d 1063, 1068 [88 Cal.Rptr. 125]; *People* v. *Pic'l* (1981) 114 Cal.App.3d 824, 869 [171 Cal.Rptr. 106], disapproved on other grounds in *People* v. *Kimble* (1988) 44 Cal.3d 480, 498 [244 Cal.Rptr. 148, 749 P.2d 803].) "[A] phantasmagoria of future harm," such as a death threat to be carried out at some undefined time, will not diminish criminal culpability. (*People* v. *Otis* (1959) 174 Cal.App.2d 119, 125 [344 P.2d 342]; *People* v. *Lewis* (1963) 222 Cal.App.2d 136, 141 [35 Cal.Rptr. 1].)

Here, defendant's vague and unsubstantiated assertion in his statement to Officer Reyes—that the Colombian Mafia had threatened to kill him and members of his family if he did not kill the Guerrero brothers—did not constitute substantial evidence that the threat of death to defendant and his family was *imminent.* Without bestowing merit on defendant's theory that duress can negate premeditation and deliberation, we simply hold that in the absence of substantial evidence of immediacy of the threatened harm, the trial court did not err in refusing defendant's proffered instructions. Consequently, defendant was not denied the effective assistance of counsel when, as a result of the court's ruling, defendant was precluded from presenting to the jury a theory of defense unsupported by the evidence.

Moreover, by finding the alleged robbery special circumstance to be true, the jury necessarily decided that the murders were committed in the course of a robbery. (§§ 189, 190.2, subd. (a)(17)(i); *People* v. *Garrison* (1989) 47 Cal.3d 746, 779 [254 Cal.Rptr. 257, 765 P.2d 419].) For this reason, the murder verdicts are not dependent on findings that the killings were deliberate or premeditated. Thus, any error by the trial court in refusing the requested instructions, which pertained only to murder premised on deliberate and premeditated conduct, was harmless. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].)

### 2. *Obligation to Instruct Sua Sponte on "Imperfect Duress" as a Defense to Robbery and Robbery-murder*

Relying on the principle articulated in *People* v. *Flannel, supra,* 25 Cal.3d 668, 678-680, that an honest but unreasonable belief in the need to defend oneself provides an "imperfect defense" to a charge of murder, defendant contends that an honest but unreasonable belief that one is acting under duress should be a complete defense to a charge of robbery. We do not agree.

In *People* v. *Flannel, supra,* 25 Cal.3d 668, we held that an honest but unreasonable belief in the need to defend oneself from imminent peril to life or great bodily injury negates malice aforethought, the requisite mental state for murder, thus reducing that offense to manslaughter. (*Id.* at pp. 679-680.) In reaching that result, we reasoned that a defendant who killed under an honestly held but mistaken belief that his own life was in peril, could not harbor malice, the requisite mental state for murder. (*Ibid.*) The absence of malice did not provide a complete defense, but rather reduced the defendant's culpability from murder to the lesser offense of manslaughter. (*Ibid.*)

In the case of robbery, however, the unreasonable belief that a defendant is acting under duress will not negate the requisite specific intent; that intent is to deprive the owner of the property taken. (*People* v. *Guerra* (1985) 40 Cal.3d 377, 385 [220 Cal.Rptr. 374, 708 P.2d 1252]; *People* v. *Ford* (1964) 60 Cal.2d 772, 792 [36 Cal.Rptr. 620, 388 P.2d 892]; 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 645, pp. 726-727.) Here, even if defendant took the jewelry from Orestes Guerrero's jewelry store under the unreasonable belief that doing so was necessary to protect life—his own or that of a family member—that unreasonable belief alone would have no effect on his intent to deprive the rightful owner permanently of the jewelry. Therefore, we reject defendant's argument that an honest but unreasonable belief in duress would negate the specific intent element of robbery.

Even if we were to hold that duress could negate the specific intent to permanently deprive another of property, the trial court in this case was under no duty to give such an instruction without a request therefor. A court need only give instructions sua sponte on general principles of law. (*People* v. *Flannel, supra,* 25 Cal.3d 668, 680-681; *People* v. *Sedeno, supra,* 10 Cal.3d 703, 715.) As we explained in *Flannel,* a legal concept that has been referred to only infrequently, and then with "inadequate elucidation," cannot be considered a general principle of law such that a trial court must include it within jury instructions in the absence of a request.[4] (25 Cal.3d at p. 681.)

---

[4]Defendant cites *People* v. *Smith* (1986) 187 Cal.App.3d 666, 679 [231 Cal.Rptr. 897], which was decided shortly before the trial in this case, as authority that duress can provide an imperfect defense to robbery and that the trial court had an obligation to instruct the jury on that theory, without request. *Smith* concluded without analysis that an honest but unreasonable belief that the defendant acted under duress might negate the specific intent necessary for robbery. (*Ibid.*) We disapprove *Smith* on this point.

In *People* v. *Flannel, supra,* 25 Cal.3d at page 682, we stated that our adoption of the rule, that a genuine but unreasonably held belief in the need to defend would provide an "imperfect" defense to murder, should be considered a general legal principle for purposes of jury instruction in cases tried after the opinion. In light of that statement, the Court of Appeal in *Smith* indicated in a footnote that its discussion of the issue of duress as an imperfect

### 3. *Failure to Instruct on Assault as a Lesser Included Offense of Robbery*

The jury convicted defendant of two counts of robbery. The Penal Code defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of *force or fear*." (§ 211, italics added.) ■ In *People* v. *Geiger* (1984) 35 Cal.3d 510, 517, footnote 4 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], we explained that for purposes of discerning whether a lesser offense is necessarily included in a greater offense, courts look either to the statutory definition of the offense or to the "charging allegations of the accusatory pleading." The information in this case charged defendant with a felonious taking by means of *"force and fear."* ■ Based on the pleading's use of the phrase "force and fear" in defining robbery, defendant contends that the crime of assault was necessarily included within the offense of robbery as charged and that the trial court thus had a sua sponte obligation to instruct on a lesser offense of assault. Even assuming for purposes of argument that assault is a lesser included offense of robbery as charged here, defendant's contention fails.

A trial court must instruct sua sponte on a lesser included offense "only if there is substantial evidence to support a jury's determination that the defendant was in fact *only* guilty of the lesser offense." (*People* v. *Ramos* (1982) 30 Cal.3d 553, 582 [180 Cal.Rptr. 266, 639 P.2d 908], italics added.) There was no such evidence in this case.

### 4. *Trial Court's Instruction on Flight and False Statements*

When the police arrived at the Goldens' apartment to arrest defendant, his packed suitcases were in his stepfather's car. Defendant had told his mother he was leaving California, and he had arranged for his stepfather to take him to the airport. In his initial statements to Officer Reyes, defendant denied killing the two Guerrero brothers, claiming that an acquaintance, Karlos Tijiboy, was the murderer. ■ Based on this evidence, the trial court, at the prosecution's request, instructed the jury that flight (CALJIC No. 2.52) and false statements (CALJIC No. 2.03) could be considered as evidence

---

defense to robbery gave rise to a sua sponte obligation for courts in future cases to give such an instruction. (*People* v. *Smith, supra,* 187 Cal.App.3d at p. 679, fn. 8.) *Smith* was also wrong in this regard; *Flannel* does not suggest that evaluation and acceptance of a legal rule in one intermediate appellate decision transforms it into a general principle of law. (*People* v. *Flannel, supra,* 25 Cal.3d at p. 682.)

tending to show consciousness of guilt.[5] Defendant now argues that the instructions denied him due process of law by permitting the jury to consider consciousness of guilt both in determining the degree of the homicides and the existence of the intent element of robbery. The essence of this argument is that the instructions allowed the jury to draw arbitrary inferences from the evidence of defendant's flight and false statements. Defendant also contends that the instructions invited the jury to draw biased inferences from isolated items of evidence and were impermissibly argumentative. We reject these contentions.

The jury could properly infer consciousness of guilt from defendant's efforts to leave California (cf. *People* v. *Silva* (1988) 45 Cal.3d 604, 628 [247 Cal.Rptr. 573, 754 P.2d 1070]), as well as from his efforts to exculpate himself by blaming Karlos Tijiboy for the murders (*People* v. *Cooper* (1970) 7 Cal.App.3d 200, 204-205 [86 Cal.Rptr. 499]). The trial court's instructions on flight and false statements did not suggest to the jurors that they could infer any mental state or degree of culpability from consciousness of guilt. Nor were the instructions biased or argumentative. Rather, they properly advised the jury of inferences that could rationally be drawn from the evidence.

### 5. *The Trial Court's Instruction That an Admission Should Be Viewed With Caution*

Based on the evidence of statements that defendant had made to the police, the trial court instructed the jury that a confession is a statement by a defendant acknowledging guilt and that an admission is a statement that tends to prove guilt.[6] The court also instructed that confessions and admissions by a defendant should be viewed with caution. The statements that

---

[5](1) CALJIC No. 2.52: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

(2) The court instructed the jury: "If you find that before this trial the defendant made willfully false or deliberately misleading statements concerning the charges upon which he is now being tried, you may consider such statements as a circumstance tending to prove consciousness of guilt but it is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and its significance, if any, are matters for your determination." (CALJIC No. 2.03 (1984 rev.) Supp. Service pamp. No. 1 (1985) p. 64.)

[6]The transcribed instruction reads as follows:

"A confession is a statement made by a defendant other than at his trial in which he has acknowledged his guilt of the crimes for which he is on trial. In order to constitute a

defendant made included some exculpatory material. ██ Defendant contends that the cautionary instruction was error in this case because it advised the jury to distrust defendant's exculpatory statements. This contention lacks merit, as is clear from consideration of the instruction as a whole.

After explaining that a confession by the accused is an acknowledgement of guilt, whereas an admission tends to show guilt, the court told the jury that it should view with caution any confession or admission made by defendant. Contrary to defendant's assertion, the instruction did not tell the jury to distrust those portions of defendant's statements to the police that did not either acknowledge or tend to show his guilt.

### 6. *Corpus Delicti Instruction*

██ The trial court instructed the jury that the prosecution had to prove each element of the charged criminal offenses by evidence independent of any confession or admission made by the defendant.[7] Defendant contends that this instruction, which advises the jury that the degree of a crime is not an element of the crime, improperly suggests that premeditation and deliberation are not elements of first degree murder, thus shifting to the defendant the burden of proof on the issue of first degree murder. We reject this contention. The instruction does not relieve the prosecution of its burden to prove premeditation and deliberation; rather, it permits the prosecution to use "extrajudicial statements to establish the degree of the crime" so long as " 'the corpus delicti of murder [has] been established.' " (*People* v. *Howard* (1988) 44 Cal.3d 375, 415 [243 Cal.Rptr. 842, 749 P.2d 279], citing *People*

---

confession, each—strike that. In order to constitute a confession, such a statement must acknowledge participation in the crimes as well as the required criminal intent.

"A statement made by a defendant other than at his trial is not a confession but an admission whenever the statement does not by itself acknowledge his guilt of the crimes for which he is on trial, but which tends to prove his guilt when considered with the rest of the evidence.

"You are the exclusive judges as to whether the defendant made a confession or an admission, and if so, whether such statement is true in whole or in part. If you should find that the defendant did not make the statement, you must reject it. If you find that it is true in whole or in part, you may consider that part which you find to be true.

"Evidence of an oral admission or an oral confession of the defendant should be viewed with caution.

"No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession or admission made by him outside of this trial."

[7]"No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession or admission made by him outside of this trial. [¶] The identity of the person who is alleged to have committed a crime is not an element of the crime nor is the degree of the crime. Such identity or degree of the crime may be established by an admission or confession." (CALJIC No. 2.72.)

v. *Cantrell* (1973) 8 Cal.3d 672, 680-681 [105 Cal.Rptr. 792, 504 P.2d 1256].)

### D. *Prosecutor's Comment on Uncontroverted Testimony*

In his statements to Officer Reyes, defendant sought to blame Karlos Tijiboy for the robbery and killings, saying first that Tijiboy had committed the crimes and later that Tijiboy, on behalf of the Colombian Mafia, had ordered defendant to do so. Tijiboy, testifying for the prosecution, denied any involvement in the murders of the Guerrero brothers. During argument, the prosecutor urged the jury to believe Tijiboy's testimony, noting that his testimony was "uncontroverted." Defendant did not object.

 Defendant now contends that the comment made by the prosecutor during closing argument "indirectly focused" the jury's attention on "defendant's refusal to testify" in violation of *Griffin* v. *California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229]. Because an admonition would have cured any possible prejudice that the prosecutor's comment might have had on the defense case, defendant's failure to object bars review of the issue. (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1236 [255 Cal.Rptr. 569, 767 P.2d 1047]; *People* v. *Green* (1980) 27 Cal.3d 1, 27-34 [164 Cal.Rptr. 1, 609 P.2d 468].) Moreover, the prosecutor's statement was a permissible comment on the state of the evidence, which did not offend *Griffin*. (*People* v. *Morris* (1988) 46 Cal.3d 1, 35 [249 Cal.Rptr. 119, 756 P.2d 843]; *People* v. *Ratcliff* (1986) 41 Cal.3d 675, 691 [224 Cal.Rptr. 705, 715 P.2d 665].)

### III. PENALTY PHASE ISSUES

### A. *Admission of Facts of Violent Criminal Activity*

At the penalty phase of the trial, the prosecution sought to establish aggravating circumstances by offering evidence of criminal activity by defendant involving force or violence. (§ 190.3, factor (b).)

Maggie Granell testified that on July 5, 1978, about 4 a.m., she and her husband were working at a store they owned in New York City when defendant and another man came into the store. Defendant held a gun to Mrs. Granell's head, cocked it and said, "Shut up or I kill you," while the other man emptied the cash register. During this time, Mr. Granell, who had a gun, was hiding behind some shelves. When defendant and his companion fled in a car, Mr. Granell ran after them and fired at the car's rear window.

New York Police Officer Dominic DiGregorio was in the area in a marked police car with a partner officer when he heard the shots and saw a car speed

away. DiGregorio chased the getaway car through the city streets at speeds of up to 90 miles per hour. During the chase, defendant, who was the passenger in the car, fired at Officer DiGregorio seven to nine times through the car's broken rear window. When the getaway car crashed into another vehicle, Officer DiGregorio arrested defendant, who was then 16 years old, and recovered the gun.

### 1. *Consideration of Facts Underlying Dismissed Charges*

Based on the incident described above, New York authorities filed a 15-count felony indictment, which included charges of robbery, attempted murder, assault with a deadly weapon and illegal possession of a loaded firearm. On August 29, 1978, defendant entered a plea of guilty to robbery. The remaining counts against him were dismissed.

At the penalty phase in this case, the prosecution presented evidence of the New York robbery, attempted getaway, and shootout as criminal activity by the defendant involving force or violence, an aggravating factor.[8] (§ 190.3, factor (b).) Defense counsel objected to the admission of evidence of the chase and shootout. He relied on language in section 190.3, which prohibits the admission of aggravating evidence pertaining to prior criminal activity "for an offense for which the defendant was prosecuted and acquitted." ▮▮▮ Counsel characterized as an "implied acquittal" the New York court's plea-bargained dismissal of the counts involving the getaway attempt and shootout. In support, he cited *People v. Harvey* (1979) 25 Cal.3d 754, 758-759 [159 Cal.Rptr. 696, 602 P.2d 396], which holds that for purposes of sentence enhancement, a court may not consider facts that pertain solely to a charge that has been dismissed as part of a plea bargain. We conclude that the trial court did not err in admitting the evidence, for reasons that follow.

After the trial in this case, we held in *People v. Heishman* (1988) 45 Cal.3d 147, 193 [246 Cal.Rptr. 673, 753 P.2d 629], that for purposes of section 190.3, an "acquittal" did not include a charge dismissed as part of a plea bargain and thus "not based on any judicial determination with respect to the truth or falsity of the charge . . . . (Accord *People v. Melton* (1988) 44 Cal.3d 713, 755 [244 Cal.Rptr. 867, 750 P.2d 741].) We explained that the

---

[8]Based on this evidence, the trial court instructed the jury: "Evidence has been introduced for the purpose of showing that the defendant has committed the following criminal activity: robbery and the shooting of a firearm at police officers which conduct involved the express use of force or violence. Before you may consider any of such criminal activity as an aggravating circumstance in this case, you must first be satisfied beyond a reasonable doubt that the defendant did in fact commit such criminal activity. You may not consider any evidence of any other criminal activity as an aggravating circumstance."

"constraint [set out in *People* v. *Harvey, supra,* 25 Cal.3d 754, 758] against reliance on facts underlying the dismissed count to fix the sentence *in the very case for which the plea bargain was executed* does not preclude the use of such facts in the penalty phase of a later, separate trial for murder with special circumstances, in order to show criminal activity involving violence as an aggravating factor." (*People* v. *Heishman, supra,* at p. 193, italics added.) Thus, in *Heishman,* we rejected the same argument that defendant in this case raised in the trial court.

Defendant nonetheless maintains that his case is not controlled by *People* v. *Heishman, supra,* 45 Cal.3d 147, but rather by *People* v. *Sheldon* (1989) 48 Cal.3d 935, 951-952 [258 Cal.Rptr. 242, 771 P.2d 1330]. In *Sheldon,* we held that admission of other-crimes evidence concerning lesser included offenses of attempted murder violated section 190.3, in view of the defendant's acquittal of attempted murder in a Nevada jury trial. We stated that "under Nevada law [the defendant's] acquittal of attempted murder would bar conviction or retrial of all necessarily included offenses" including those the prosecution had introduced as other-crimes evidence. (*People* v. *Sheldon, supra,* 48 Cal.3d at p. 951.) Based on this reference to Nevada law, defendant suggests that we have held that the law of the state in which a defendant has been acquitted controls on the issue of what constitutes an acquittal for purposes of section 190.3, and he argues that under New York law he was acquitted of the dismissed charges. Defendant misreads *Sheldon.*

Our conclusion in *People* v. *Sheldon, supra,* 48 Cal.3d 935, 951, that admission of other-crimes evidence was error, was premised on our earlier holding in *People* v. *Heishman, supra,* 45 Cal.3d 147, 193, that for purposes of section 190.3, "an offense for which the defendant [was] 'prosecuted and acquitted' " was one where the falsity of the charge had been judicially established. As we acknowledged, after such an acquittal, principles of double jeopardy and due process would bar a retrial of the same charge or of lesser offenses that are included in that charge. (*People* v. *Sheldon, supra,* 48 Cal.3d at p. 951, citing *People* v. *Melton, supra,* 44 Cal.3d 713, 756, fn. 17.) Thus it was in that context that we looked to Nevada law in *Sheldon* to decide whether the evidence that had been presented was for crimes that were lesser included offenses of the charge of attempted murder of which the defendant had been acquitted. (*People* v. *Sheldon, supra,* 48 Cal.3d 935, 951-952.) We did not at all suggest that the law of another state would control on the issue of what constituted an acquittal for purposes of section 190.3.

■■■ ■■ ■■■ Additionally, defendant argues that admission of evidence of facts pertaining to the dismissed charges violated the full faith

and credit clause of the United States Constitution. (U.S. Const., art. IV, § 1.)[9] He maintains that under New York law the facts involving a charge that has been dismissed as part of a plea bargain may not be considered as an aggravating circumstance, and that the trial court in this case had to apply New York law. We disagree.

Under New York law, the dismissal of criminal charges as part of a plea bargain is an "acquittal" of those charges, which precludes prosecution on the dismissed charges (*People* v. *Romer* (1972) 38 A.D.2d 757 [329 N.Y.S.2d 719, 721]) or consideration of their underlying facts for the purpose of imposing a sentence to a reduced charge (*People* v. *Griffin* (1960) 7 N.Y.2d 511, 515-516 [199 N.Y.S.2d 674, 166 N.E.2d 684]). Thus, when as part of a plea bargain, a defendant pleads to a reduced charge and the remaining charges are dismissed, New York law precludes courts from considering the allegations supporting the dismissed charges when imposing sentence. (*People* v. *Griffin, supra,* 7 N.Y.2d at p. 515.) A plea to a lesser charge "does not presuppose the truth of the facts pleaded in the indictment. . . . [Defendant's] plea only admits the facts stated in the plea as constituting the lesser crime." (*Ibid.*; accord *People* v. *Ayiotis* (1965) 23 A.D.2d 760 [258 N.Y.S.2d 554, 556]; *People* v. *DeFini* (1964) 20 A.D.2d 250 [246 N.Y.S.2d 485, 487-488]; *People* v. *Hall* (1961) 28 Misc.2d 769 [216 N.Y.S.2d 148, 149-150].) These cases, however, do not purport to define what constitutes an acquittal for purposes of the admission of aggravating evidence in a California capital case.

As previously explained, we have defined an "offense for which the defendant [was] 'prosecuted and acquitted' " under section 190.3 as one in

---

[9]Under the full faith and credit clause, "any valid civil judgment rendered in any state or territory of the United States is entitled to full faith and credit in the courts of every sister state and territory, subject only to the limitations of the second state's bona fide procedural rules." (LeFlar et al., American Conflicts Law (4th ed. 1986) § 75, pp. 223-224; see *Sun Oil Co.* v. *Wortman* (1988) 486 U.S. 717, 722-723 [100 L.Ed.2d 743, 752-753, 108 S.Ct. 2117]; *Underwriters Assur. Co.* v. *N. C. Guaranty Assn.* (1982) 455 U.S. 691, 703-705 [71 L.Ed.2d 558, 569-571, 102 S.Ct. 1357].) The clause clearly applies to civil judgments and to administrative adjudications (cf. *United States* v. *Utah Constr. Co.* (1966) 384 U.S. 394, 420-422 [16 L.Ed.2d 642, 659-661, 86 S.Ct. 1545]; see also *People* v. *Terry* (1964) 61 Cal.2d 137, 148 [37 Cal.Rptr. 605, 390 P.2d 381]) but "does not require that sister States enforce a foreign penal judgment . . . ." (*Nelson* v. *George* (1970) 399 U.S. 224, 229 [26 L.Ed.2d 578, 582, 90 S.Ct. 1963]; accord *Huntington* v. *Attrill* (1892) 146 U.S. 657 [36 L.Ed. 1123, 13 S.Ct. 224]; *The Antelope* (1825) 23 U.S. (10 Wheat.) 66, 123 [6 L.Ed. 268, 282]; *Piercy* v. *Black* (8th Cir. 1986) 801 F.2d 1075, 1078 ["one state cannot control the manner in which another state administers its criminal justice system"]; but see *Johnson* v. *Mississippi* (1988) 486 U.S. 578, 585, fn. 6 [100 L.Ed.2d 575, 584, 108 S.Ct. 1981] [reversing the judgment of death as inconsistent with the Eighth Amendment, but mentioning that the court declined to address the defendant's challenge under the full faith and credit clause to a death judgment in which the Mississippi court in deciding penalty had considered a New York conviction later vacated on habeas corpus.)

which there has been a judicial determination of the truth or falsity of the charge. (*People* v. *Heishman, supra,* 45 Cal.3d 147, 193.) An offense falls within this definition only if such a judicial determination has been made; a foreign jurisdiction's contrary definition of "acquittal" has no bearing on our construction of section 190.3. Accordingly, assuming that the full faith and credit clause applies in criminal cases, it does not require us to follow New York cases defining an "acquittal."

### 2. *Staleness*

 Defendant characterizes as "stale" the evidence of the New York robbery, chase, and shootout, which occurred nine years before the trial in this case, and points to three separate factors that he claims prevented him from effectively challenging that evidence: the trial court's determination that there was no need for a preliminary inquiry into the sufficiency of the prosecution's evidence of other crimes (see *People* v. *Phillips* (1985) 41 Cal.3d 29, 72, fn. 25 [222 Cal.Rptr. 127, 711 P.2d 423]); the refusals by Mrs. Granell and Officer DiGregorio to meet with defense counsel; and (because defendant had pleaded guilty) the absence of any trial transcript from the New York case. Under these circumstances, defendant contends, admission at the penalty phase of evidence of the robbery, chase and shootout violated both his due process right to effectively refute the evidence and the requirement of heightened reliability that the Eighth Amendment imposes in a capital case. We reject these contentions.

We previously have held that under section 190.3, factor (b), the prosecution can offer evidence in aggravation of "criminal violence which has occurred at any time in the defendant's life." (*People* v. *Balderas* (1985) 41 Cal.3d 144, 202 [222 Cal.Rptr. 184, 711 P.2d 480].) In addition, we have rejected timeliness challenges to the use of such evidence on both due process (*People* v. *Robertson* (1989) 48 Cal.3d 18, 43 [255 Cal.Rptr. 631, 767 P.2d 1109]) and Eighth Amendment grounds (*People* v. *Douglas* (1990) 50 Cal.3d 468, 529-530 [268 Cal.Rptr. 126, 788 P.2d 640]). These holdings control here. The three separate factors that defendant points out as having interfered with his discovery efforts do not compel a different result.

### 3. *Other Claims of Constitutional Error*

 Defendant argues that allowing the jury to consider evidence of the New York robbery placed him twice in jeopardy for the same offense. (See U.S. Const., Amend. V; Cal. Const., art. I, § 15; *United States* v. *DiFrancesco* (1980) 449 U.S. 117, 127-128 [66 L.Ed.2d 328, 339, 101 S.Ct. 426].) As defendant acknowledges, we have consistently rejected substantially similar

contentions, holding that the constitutional guarantees against double jeopardy do not apply "when the prior criminal activity is considered by the penalty jury as a proper aggravating factor under section 190.3, factor (b)." (*People* v. *Douglas, supra,* 50 Cal.3d 468, 528; accord *People* v. *Melton, supra,* 44 Cal.3d 713, 756, fn. 17.) Defendant presents no persuasive reason to reconsider these holdings.

■ Defendant also contends that to permit the jury to decide that death is the appropriate punishment without jury unanimity on the existence of the other-crimes evidence does not meet the heightened "need for reliability in the determination that death is the appropriate punishment," as compelled by the Eighth Amendment. (*Woodson* v. *North Carolina* (1976) 428 U.S. 280, 305 [49 L.Ed.2d 944, 961-962, 96 S.Ct. 2978].) We disagree.

*People* v. *Robertson* (1982) 33 Cal.3d 21, 53-55 [188 Cal.Rptr. 77, 655 P.2d 279], requires a trial court to instruct a penalty phase jury that, before considering evidence of the defendant's other crime(s) as a circumstance in aggravation (§ 190.3, factor (b)), it must be satisfied beyond a reasonable doubt that the uncharged crime(s) occurred. Here, the trial court did so. It had no sua sponte obligation to instruct the jury "that its finding of uncharged criminal activity must be unanimous." (*People* v. *Ghent* (1987) 43 Cal.3d 739, 773 [239 Cal.Rptr. 82, 739 P.2d 1250].) We explained in *Ghent* that to require jury unanimity as "to each incident of uncharged criminal activity disclosed during the penalty phase" "would immerse the jurors in lengthy and complicated discussions wholly collateral to the penalty determination which confronts them." (*Id.* at pp. 773-774.) In *Ghent,* the trial court instructed the jury that " 'to make a determination as to the penalty, all twelve jurors must agree' "; that instruction, we held, was "sufficient under existing law . . . ." (*Id.* at p. 773.) Here, too, the trial court gave such an instruction. Defendant interprets *Ghent* as holding that the instruction satisfies due process of law. He argues, however, that we have yet to decide whether the instruction comports with the Eighth Amendment's reliability requirement. Although we did not mention the Eighth Amendment when we discussed this instruction in *Ghent,* we impliedly rejected the argument defendant makes here when we concluded that the instruction was sufficient "under existing law." (*Ibid.*)

■ In addition, defendant argues that the cumulative impact of permitting the same jury that considered guilt to hear the other-crimes evidence and to decide penalty without instruction on the elements of those crimes violates both the Eighth and Fourteenth Amendments to the United States Constitution.

Defendant acknowledges that in *People* v. *Balderas, supra,* 41 Cal.3d 144, 204-205, we rejected a challenge to section 190.3, factor (b), on the ground

that it violated due process by allowing "a jury which has already decided defendant's guilt to consider, on the issue of penalty, other violent crimes on which defendant was neither charged nor convicted." Defendant, however, claims that in *Balderas* we resolved the issue only in terms of "due process" and we therefore did not reject the argument on Eighth Amendment grounds. Not so. In *People* v. *Balderas, supra,* 41 Cal.3d at pages 204-205, we considered the challenged procedure in light of the relevant United States Supreme Court authorities and concluded it was neither " 'prejudicial,' 'unreliable,' 'irrelevant,' [n]or 'fundamentally unfair.' " (*Id.* at p. 205, fn. 32.)

We also have rejected the other part of defendant's cumulative-impact argument when we previously held that a trial court has no sua sponte duty to instruct on the elements of the underlying "other crimes." (*People* v. *Ghent, supra,* 43 Cal.3d 739, 773.) Evaluation of defendant's "cumulative impact" argument is therefore unnecessary in light of our rejection on the merits of both of its components. (*People* v. *Sully* (1991) 53 Cal.3d 1195, 1249 [283 Cal.Rptr. 144, 812 P.2d 163].)

■ Finally, defendant contends that the procedures for proving other crimes under section 190.3, factor (b) are "less stringent" than those for proving prior felonies for purposes of sentence enhancement (see § 667.5; *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150]), arguing that the penalty phase procedures violate principles of equal protection. As we have stated, "The penalty phase is unique, intended to place before the sentencer all evidence properly bearing on its decision . . . ." (*People* v. *Balderas, supra,* 41 Cal.3d 144, 205, fn. 32.) The facts of a capital defendant's "[p]rior violent criminality" are "obviously relevant" to this decision. (*Ibid.*) The purpose served by the rules governing sentence enhancement is not similar. (See *People* v. *Lang* (1989) 49 Cal.3d 991, 1037-1039 [264 Cal.Rptr. 386, 782 P.2d 627].) Under these circumstances, there is no equal protection violation. (See *People* v. *Marshall* (1990) 50 Cal.3d 907, 945 [269 Cal.Rptr. 269, 790 P.2d 676].)

### 4. *Evidence of "Other Crimes" Attributable to the Codefendant*

■ Defendant challenges the admission of evidence of his codefendant's criminal conduct during the New York robbery incident in driving the getaway car at breakneck speeds through populated city streets. He argues that consideration of criminal conduct committed by someone other than the defendant is impermissible under section 190.3, factor (b). He also points out that the prosecution's notice listing its intended penalty phase evidence did not specify the codefendant's driving, as distinguished from defendant's own

violent conduct during the robbery and chase. According to defendant, this omission violates the notice requirements of section 190.3.[10] He also contends that allowing the jury to hear evidence of violent conduct committed by someone other than the defendant violates the constitutional constraint on capital sentencing that it reflect the jury's " 'reasoned moral response to the *defendant's* background, character, and crime.' " (*Sumner* v. *Shuman* (1987) 483 U.S. 66, 76, fn. 5 [97 L.Ed.2d 56, 66, 107 S.Ct. 2716], italics added and deleted.) We reject these arguments.

Defendant concedes that as an accomplice in the robbery and getaway he could have been criminally liable for harm resulting from his codefendant's actions. He argues, however, that the rule of accomplice liability does not apply to the presentation of other-crimes evidence under section 190.3, factor (b), arguing that such evidence must be limited to criminal activity involving force or violence in which defendant was himself the perpetrator. We previously have rejected a similar contention in *People* v. *Hayes* (1990) 52 Cal.3d 577, 633 [276 Cal.Rptr. 874, 802 P.2d 376], when we held that evidence of a defendant's aiding and abetting of a violent criminal offense was admissible under factor (b). In addition, we consistently have held that the prosecution is entitled to present evidence of a defendant's other crimes "in context." (*People* v. *Melton, supra,* 44 Cal.3d 713, 754; accord *People* v. *Keenan* (1988) 46 Cal.3d 478, 526 [250 Cal.Rptr. 550, 758 P.2d 1081].) Section 190.3, factor (b) is not violated when, as here, defendant could have been liable as an accomplice for conduct by the codefendant, and evidence of that conduct is necessary to place the defendant's own conduct in context.

Equally lacking in merit is defendant's argument that the prosecution's notice was insufficient under section 190.3. The prosecution gave notice of its intent to present evidence of the New York robbery and gun battle as aggravating circumstances. That notice adequately advised defendant that the described evidence would include reference to the attempted getaway during which the gun battle took place.

We also reject defendant's contention that permitting the jury to consider his participation in a criminal joint venture violated the constitutional requirement that the sentencing decision in a capital case be based on "the character and record of the individual offender . . . ." (*Woodson* v. *North Carolina, supra,* 428 U.S. 280, 304 [49 L.Ed.2d 944, 961].) Moreover, in light of the evidence of violent criminal conduct personally attributable to

---

[10]As relevant here, section 190.3 provides that "no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the trial court, prior to trial."

defendant during this same incident (threatening Mrs. Granell with a gun pressed against her head and, after fleeing the scene, repeatedly firing at the pursuing officers), any possible error in admitting evidence of the codefendant's reckless driving was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

B. *Admissibility of Evidence of Defendant's Prior Felony Convictions for Sale of a Controlled Substance and Attempted Criminal Possession of a Weapon Under Factor (c) of Section 190.3*

 As evidence in aggravation, the prosecution sought to prove that defendant had sustained two other felony convictions in New York for sale of a controlled substance and for possession of a firearm. (§ 190.3, factor (c).)[11] Although the prosecution gave notice of its intent to offer such evidence, the notice did not specify the method by which the prosecution intended to prove the prior convictions. Accordingly, the trial court limited the prosecution to proving the convictions by means of documentary evidence.

After the trial court had overruled defendant's objection to admission of evidence of the two prior felony convictions, defendant offered to stipulate to those convictions. He then proposed alternative stipulations that would prevent the jury from learning that the offenses occurred at the same time and that he had used a firearm during a drug offense. The prosecution, however, refused to stipulate to a sanitized version of the convictions. Ultimately, the parties agreed to a stipulation, which was read to the jury.[12] Defendant raises multiple challenges to the admission of the two prior felony convictions.

As a threshold matter, the Attorney General invites us to hold that by stipulating to those prior convictions defendant waived his previously raised objections. We decline to do so. Defendant objected to the admission of evidence of the prior felony convictions on the grounds asserted here, but the trial court overruled his objection. We conclude that defendant has preserved

---

[11]Under factor (c), the jury, in deciding penalty, can consider "[t]he presence or absence of any prior felony conviction."

[12]In relevant part, the stipulation stated: "[P]rior to the commission of the offenses charged in this particular case . . . the defendant, Miguel Angel Bacigalupo, was in Suffolk County of the State of New York, convicted of two felony convictions, as follows: the criminal sale of a controlled substance of the third degree, and . . . attempted criminal possession of a weapon in the third degree. Further, pursuant to the stipulation, each of those two offenses was committed on April 11, 1978, and the defendant was convicted of each of those two convictions on May 14th, 1979."

those issues for appeal. (See *People* v. *Morris* (1991) 53 Cal.3d 152, 190-191 [279 Cal.Rptr. 720, 807 P.2d 949].) Defendant stipulated to the facts of his two prior New York convictions only after the trial court had overruled his objection. Under these circumstances, the stipulation served to control the form of the evidence, not to concede admissibility. (See *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 299-300, fn. 17 [85 Cal.Rptr. 444, 466 P.2d 996]; 3 Witkin, Cal. Evidence (3d ed. 1986) § 2015, p. 1975.)

 Defendant contends that his New York felony conviction for "attempted criminal possession of a weapon in the third degree" (N.Y. Penal Law § 265.02 (Consol. Laws)) was inadmissible as a prior *felony* conviction under factor (c) of section 190.3, because in California he would have been guilty only of a misdemeanor. (Compare § 12031, subd. (a) [carrying a loaded firearm is a misdemeanor].) Defendant cites sections 667, subdivision (a), 667.5, subdivision (f), and 668, which specify the circumstances for using prior convictions to enhance punishment of a subsequent offense, drawing an analogy between section 190.3, factor (c) and those statutes. We have rejected essentially the same argument in *People* v. *Lang, supra,* 49 Cal.3d 991, 1037-1039. There we noted that in contrast to the enhancement provisions, which place express limitations on the use of out-of-state prior felony convictions, factor (c) "provides without limitation that the trier of fact shall consider in determining penalty '[t]he presence or absence of *any* prior felony conviction.' " (49 Cal.3d at p. 1039, italics in original.) Because factor (c) contains no language limiting the out-of-state felony convictions to those that would qualify as felonies in California, its reference to " 'prior felony convictions' " includes "any prior conviction which was a felony under the laws of the convicting jurisdiction." (49 Cal.3d at pp. 1038-1039.)

Nor is the constitutional requirement of equal protection violated by permitting a penalty phase jury to consider a defendant's out-of-state felony convictions that would not be admissible for purposes of sentence enhancement. As we observed earlier, the purposes served by the two procedures are not similar. (*Ante,* p. 136.)

Defendant also contends that the statutory scheme allowing introduction of a New York felony conviction for conduct that in California would only be a misdemeanor creates the risk prohibited by the Eighth Amendment that the death penalty will be arbitrarily or capriciously imposed. We disagree. It is not arbitrary or capricious to allow a jury deciding penalty to consider a defendant's willingness to engage in felonious conduct even if that conduct is not felonious in California.

 Defendant further argues that the trial court erred in admitting evidence of the two prior New York felony convictions under Evidence Code

section 352, and in failing to balance prejudice to him against the probative value of those convictions before ruling that the evidence was admissible. Under *People* v. *Green, supra,* 27 Cal.3d 1, 25, "the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value" when ruling on an Evidence Code section 352 motion. Here, as defendant points out, such a showing does not appear on this record.

A trial court has limited discretion under Evidence Code section 352 in deciding whether to admit documentary evidence of a prior felony conviction as aggravating evidence at the penalty phase of a capital case. (See *People* v. *Karis* (1988) 46 Cal.3d 612, 641 [250 Cal.Rptr. 659, 758 P.2d 1189].) Factor (c) of section 190.3 expressly allows the admission of evidence of prior felony convictions. Thus, the trial court's discretion to exclude such evidence under Evidence Code section 352 is limited to the form of the evidence, that is, "[t]he manner in which the prosecution seeks to present its case . . . ." (*People* v. *Karis, supra,* at p. 641, fn. 21.) Here, the trial court limited the prosecution to documentary evidence consisting of court records to prove the prior felony convictions. This method of proof minimized any possible prejudice that might have arisen from proving defendant's prior felony convictions. Under these circumstances, the trial court's failure to explicitly set forth its weighing process was harmless. (See *People* v. *Brown* (1988) 46 Cal.3d 432, 447 [250 Cal.Rptr. 604, 758 P.2d 1135].)

██ Finally, defendant contends that telling the jury of the dates on which the prior felonies were committed, as opposed to the dates of conviction, exceeded the permissible scope of prior-felony-conviction evidence admissible under section 190.3, factor (c). We reject that contention.

Prior felony convictions not involving force or violence are relevant to the death penalty determination "only for their most material purpose—to demonstrate that the *capital offense* was undeterred by *prior successful felony prosecutions.*" (*People* v. *Balderas, supra,* 41 Cal.3d 144, 202, italics in original.) Allowing the jury to consider the date of the criminal conduct underlying a prior felony conviction is consistent with this limited purpose.

Here, the two prior felony offenses occurred on the same day. The jury's knowledge of that date exposed one additional fact, namely, that defendant was armed during a drug sale. Even if we were to conclude that admission of the date of the prior offenses was improper, there is no "reasonable possibility" that such error affected the penalty verdict. (*People* v. *Brown, supra,* 46 Cal.3d 432, 447.)

## C. *Rebuttal Testimony Regarding Defendant's Knowledge of Victim Orestes Guerrero's Minor Children*

The defense presented evidence in mitigation through the testimony of defendant's mother, Dina Golden. She described defendant as a sensitive, caring person: "He has a lot of love and affection in his heart. . . . Even with people that he has . . . never even known, he has had the generosity to give them gifts and clothes."

On cross-examination, the prosecutor asked Mrs. Golden if defendant had been present during a conversation in which Maria Guerrero, the wife of victim Orestes Guerrero, had discussed her family in Peru. Mrs. Golden denied that any such conversation had taken place. On rebuttal, the prosecutor sought to present the testimony of Maria Guerrero about her alleged conversation with defendant's mother. The prosecutor offered to prove that defendant had heard the conversation and thus knew that Orestes Guerrero had six children when he killed him. This evidence, according to the prosecutor, would tend to show that defendant was not the sensitive young man that his mother had portrayed him to be.

Over defense objection, the trial court admitted Mrs. Guerrero's testimony for the limited purpose of rebutting the inference that defendant was kind-hearted. Mrs. Guerrero testified that about a month before the murders she was a dinner guest at Mrs. Golden's home. While Mrs. Guerrero was discussing her children, defendant entered the room. Mrs. Golden never introduced Mrs. Guerrero to defendant, however.

Defendant contends that the admission of this testimony was improper rebuttal; that its prejudicial effect outweighed its probative value (Evid. Code, § 352); that by placing victim impact evidence before the jury it exceeded the scope of evidence made admissible at the penalty phase under section 190.3; and thus that it violates the due process and cruel or unusual punishment clauses of the California Constitution (art. I, §§ 15, 17).[13] We reject each of these contentions.

In general, the prosecution may not present evidence of a defendant's bad character during its penalty phase case unless the evidence is admissible as one of the aggravating factors listed in section 190.3. (*People v. Boyd* (1985) 38 Cal.3d 762, 775-776 [215 Cal.Rptr. 1, 700 P.2d 782].) But

___

[13]In his opening brief, defendant also argued that admission of the evidence violated *Booth v. Maryland* (1987) 482 U.S. 496, 504-505 [96 L.Ed.2d 440, 449-450, 107 S.Ct. 2529]. In a supplemental brief filed before oral argument, defendant abandoned this argument in light of the United States Supreme Court's opinion in *Payne v. Tennessee* (1991) 501 U.S. __, __-__ [115 L.Ed.2d 720, 736-739, 111 S.Ct. 2597, 2609-2611], overruling *Booth*.

when the defense presents mitigating evidence of a defendant's good character, it has put the defendant's character in issue, thus opening the door to prosecution evidence tending to rebut that "specific asserted aspect of [the defendant's] personality." (*People* v. *Rodriguez* (1986) 42 Cal.3d 730, 792, fn. 24 [230 Cal.Rptr. 667, 726 P.2d 113].) Such rebuttal evidence, however, must be specific and "must relate directly to a particular incident or character trait defendant offers in his own behalf." (*Ibid.*) In *Rodriguez*, we concluded that evidence that the defendant had reached for a shotgun in the back of his car when stopped by a police officer was properly admitted to rebut evidence that he was a gentle person who avoided violent confrontations. (*Id.* at pp. 791-792.)

 Here, because defendant's mother had testified to his kind and generous nature, the prosecution could have rebutted her testimony with evidence tending to disprove that aspect of defendant's character. The prosecution had offered to prove that when defendant killed Orestes Guerrero he knew that Guerrero was the father of, and the sole support for, six minor children. That evidence would have been probative of whether defendant was a kind person and thus would have been proper rebuttal. In addition, the evidence would also have been admissible under factor (a) of section 190.3 as a circumstance of the present crimes. Accordingly, the trial court did not err in ruling admissible the evidence that the prosecution offered to prove.

The actual evidence offered on rebuttal, however, showed nothing more than that defendant was in the same room as Mrs. Guerrero when she mentioned her children. It is not clear from Mrs. Guerrero's testimony that defendant even overheard her comments or knew who she was. Under these circumstances, Mrs. Guerrero's testimony did not rebut defendant's character evidence or show his personal moral culpability at the time of the murder. But because defendant never made a motion to strike the testimony actually presented, he may not now complain that its admission was improper. (Evid. Code, § 353; *People* v. *McDaniel* (1976) 16 Cal.3d 156, 176 [127 Cal.Rptr. 467, 545 P.2d 843].) In any event, any possible error was harmless.

D. *Exclusion of Evidence on How Imposition of Death Penalty Would Affect Defendant's Mother*

 During the defense penalty phase case, counsel sought to elicit testimony from Reverend Richard Lyon regarding the impact on defendant's mother if defendant were sentenced to death. The trial court sustained the prosecutor's objection to such testimony. Defendant contends that exclusion of the proffered testimony improperly kept from the jury relevant mitigating evidence in violation of *Skipper* v. *South Carolina* (1986) 476 U.S. 1, 4 [90

L.Ed.2d 1, 6, 106 S.Ct. 1669]. Defendant cites to the recent holding by the United States Supreme Court that the "impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed" (*Payne* v. *Tennessee, supra,* 501 U.S. __, __ [115 L.Ed.2d 720, 736, 111 S.Ct. 2597, 2609]), and argues that similar testimony of the impact of the death penalty on a defendant's family is equally relevant to penalty determination.

Assuming that testimony of a death judgment's impact on the defendant's family is "relevant mitigating evidence" for purposes of *Skipper,* and that Reverend Lyon could have testified to the effect that a death sentence in this case would have on defendant's mother, the trial court did not err in excluding that testimony. The trial court permitted defendant's mother to make a statement directly to the jury, in which she begged the jury to spare defendant's life. In light of that statement, Reverend Lyon's testimony would have been cumulative. (See *Skipper* v. *South Carolina, supra,* 476 U.S. at p. 8 [90 L.Ed.2d at p. 9].)

E. *Prosecutor's Argument About the Absence of Mitigating Factors*

At the close of the penalty phase of the trial, the prosecutor used the aggravating and mitigating factors set out in section 190.3 as a framework for her argument to the jury. She first urged the jury to consider the facts of the double murder of the Guerrero brothers and the robbery of the jewelry store under factor (a), which allows the jury in deciding penalty to consider the aggravating circumstances of the present crimes. She emphasized that defendant had planned the robbery in advance, and that the murders were a calculated part of that plan. The prosecutor also referred to factor (d), which permits the jury to consider whether a defendant was "under the influence of extreme mental or emotional disturbance" when the crimes were committed. According to the prosecutor, the evidence did not show that defendant had acted under extreme mental or emotional disturbance, but rather that he had "coldly calculated what he was going to do," a circumstance in aggravation. The prosecutor then turned to factor (g), which provides for the jury to consider whether a defendant acted under "extreme duress." The prosecutor argued: "The only duress was [defendant's] greed. The only domination was his total indifference to human life. [¶] You may find that this factor is neither aggravated or [*sic*] mitigated. Obviously you're going to be the ones to decide what weight to give all of these factors. But in my opinion, based upon the evidence, the defendant's greed, and total indifference do show that not only was there no extreme duress and that he was not under the substantial domination of another person, but that they are aggravating factors." Defense counsel objected to this argument, stating: "[I]t's improper

to argue that these factors [(d) and (g) of section 190.3] can be aggravating." The court overruled the objection.

■ Defendant now contends that the prosecutor's argument improperly invited the jury to consider the absence of mitigating evidence as evidence in aggravation (*People* v. *Davenport* (1985) 41 Cal.3d 247, 288-290 [221 Cal.Rptr. 794, 710 P.2d 861), and that, because this case was tried after *Davenport*, the prosecutor acted in bad faith in making the argument. We disagree.

In *People* v. *Davenport, supra,* 41 Cal.3d 247, 288-290, we cautioned prosecutors against arguing that the absence of a particular mitigating factor was itself a factor in aggravation. This proscription is not violated, however, by pointing out to the jury that there has been no evidence to support a particular mitigating factor. (*People* v. *Dyer* (1988) 45 Cal.3d 26, 83 [246 Cal.Rptr. 209, 753 P.2d 1].) Here, the prosecutor noted that defendant had failed to prove, as evidence in mitigation, that he committed the crimes under extreme mental or emotional disturbance (factor (d)) or under duress (factor (g)). The prosecutor then argued that the circumstances under which the crimes were committed not only disproved these theories, but were themselves aggravating. This argument, that the circumstances of the crimes were aggravating, was proper under factor (a). Moreover, when she first argued the issue of aggravating and mitigating evidence, the prosecutor told the jury: "It may be that you will find that some of the possible factors mentioned don't apply in this case, in either a mitigating or aggravating fashion. Remember, *if there is not a mitigating factor present, that does not automatically mean that the factor is aggravating.*" (Italics added.) This was consistent with our statement in *People* v. *Davenport, supra,* 41 Cal.3d at page 289, that "the absence of mitigation would not automatically render the crime more offensive . . . ." Accordingly, we reject defendant's contention that the prosecutor improperly urged the jury to consider the absence of mitigating evidence as evidence in aggravation.

■ We have also held, however, that a prosecutor's argument that "certain otherwise mitigating factors, should . . . be considered aggravating," although not directly contrary to our holding in *People* v. *Davenport, supra,* 41 Cal.3d 247, 288-290, nonetheless violates its "spirit." (*People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1034 [248 Cal.Rptr. 568, 755 P.2d 1017]; accord *People* v. *Cox* (1991) 53 Cal.3d 618, 683 [280 Cal.Rptr. 692, 809 P.2d 351].) As discussed above, factors (d) and (g) of section 190.3 allow the jury to consider whether a defendant committed the crimes under extreme emotional distress or duress. To the extent that the prosecutor's argument can be understood to suggest incorrectly that the aggravating circumstances of the

present crimes could also be considered under the additional categories provided by factors (d) and (g), defendant was not prejudiced. Factor (a) of section 190.3 allows prosecutors to describe the totality of the aggravating circumstances of defendant's current offenses. Here, the prosecutor did not specifically invite the jurors to count the categories of aggravating factors and the court expressly instructed the jury not to do so: "The weighing of aggravating and mitigating circumstances does not mean a mere mechanical counting of factors on each side of an imaginary scale . . . ."

Defendant also challenges the prosecutor's argument on Eighth Amendment grounds as having placed "invalid aggravating circumstances" before the jury. We reject this challenge as meritless. The Eighth Amendment does not preclude jury consideration of the aggravating circumstances of a defendant's current offenses in deciding penalty.

F. *Trial Court's Refusal of Instructions Requested by the Defense*

■ The trial court refused to give this instruction requested by defense counsel: "If you have a reasonable doubt as to which penalty to impose, death or life in prison without the possibility of parole, you must give the defendant the benefit of that doubt and return a verdict fixing the penalty at life in prison without the possibility of parole." As defendant concedes, we have held that such an instruction is not constitutionally compelled. (*People v. Melton, supra,* 44 Cal.3d 713, 762-763; *People v. Williams* (1988) 44 Cal.3d 883, 960-961 [245 Cal.Rptr. 336, 751 P.2d 395]; *People v. Rodriguez, supra,* 42 Cal.3d 730, 777-779.)

Nevertheless, citing *Adamson v. Ricketts* (9th Cir. 1988) 865 F.2d 1011, defendant contends that the instruction was required, reasoning that a death penalty statute may not constitutionally place the burden on the defendant to prove that the mitigating circumstances outweigh those in aggravation. Recently, in *People v. Duncan* (1991) 53 Cal.3d 955, 979 [281 Cal.Rptr. 273, 810 P.2d 131], we rejected a similar argument, noting that the continuing vitality of *Adamson* seems doubtful after the United States Supreme Court's decision in *Blystone v. Pennsylvania* (1990) 494 U.S. 299, 305 [108 L.Ed.2d 255, 263, 110 S.Ct. 1078].

Defendant also contends that the trial court's refusal to give his proposed instruction violated principles of equal protection by allowing the jury to decide that death is the appropriate penalty without proof beyond a reasonable doubt, the standard required in jury determinations regarding "less protected" interests, such as commitment as a mentally disordered sex offender (see *People v. Feagley* (1975) 14 Cal.3d 338, 345 [121 Cal.Rptr.

509, 535 P.2d 373]). We rejected this same argument in *People v. Robertson*, *supra*, 48 Cal.3d 18, 63, stating that the jury's role in "fact-finding proceedings," such as the one defendant proposes, is not analogous to its "moral and normative" sentencing function in a death penalty case. (*Ibid.*, citation omitted.)

▮▮ Defendant further faults the trial court for its refusal to instruct the jury not to consider deterrence or cost in reaching its penalty decision.[14] In *People v. Thompson* (1988) 45 Cal.3d 86, 132 [246 Cal.Rptr. 245, 753 P.2d 37], we said it would not be error to give this instruction "to forestall consideration of deterrence or cost . . . ." Because no emphasis had been placed on those considerations, we concluded that the trial court's refusal to give the instruction "was not prejudicial." (*Ibid.*) This is also true here. Although the prosecutor mentioned that defendant was 22 at the time of the murders, she did so to emphasize his adulthood and to point out that here age was not a circumstance in mitigation under section 190.3, factor (i). She did not exploit defendant's age to suggest that his imprisonment for life without possibility of parole would be costly. On these facts, the trial court's failure to give the requested instruction did not prejudice defendant.

G. *Constitutional Challenges to the 1978 Death Penalty Sentencing Scheme*

▮▮ Defendant contends that the 1978 death penalty law violates the due process clause of the federal Constitution because it fails to require proof beyond a reasonable doubt of the factual predicates necessary for a death sentence, namely, that the circumstances in aggravation outweigh those in mitigation. Although defendant concedes that in several cases we have held that such proof beyond a reasonable doubt is not constitutionally compelled (see *People v. Caro* (1988) 46 Cal.3d 1035, 1068 [251 Cal.Rptr. 757, 761 P.2d 680]; *People v. Coleman* (1988) 46 Cal.3d 749, 787 [251 Cal.Rptr. 83, 759 P.2d 1260]; *People v. Heishman*, *supra*, 45 Cal.3d 147, 189; *People v. Rodriguez*, *supra*, 42 Cal.3d 730, 777-779), he contends that we have rejected only challenges brought under the Eighth Amendment and that we have never considered whether due process requires proof beyond a reasonable doubt. Defendant misreads the cases. We have specifically rejected the claim on both Eighth Amendment and due process grounds (*People v. Gates* (1987) 43 Cal.3d 1168, 1201 [240 Cal.Rptr. 666, 743 P.2d 301]; *People v. Rodriguez*, *supra*, 42 Cal.3d 730, 778, fn. 15), and decline to reconsider it here.

---

[14]Defendant's requested instruction read: "In deciding whether death or life imprisonment without the possibility of parole is the appropriate sentence, you may not consider for any reason whatsoever the deterrent or non-deterrent effect of the death penalty or the monetary cost to the state of execution or maintaining a prisoner for life."

██ Defendant also challenges the validity of allowing the jury to return a verdict of death without reaching unanimous agreement on those aggravating circumstances that support imposition of the death penalty. We consistently have held that there is no constitutional requirement for the jury to reach unanimous agreement on the circumstances in aggravation that support its verdict. (*People* v. *Cox, supra,* 53 Cal.3d 618, 692; *People* v. *Andrews* (1989) 49 Cal.3d 200, 233 [260 Cal.Rptr. 583, 776 P.2d 285]; *People* v. *Rodriguez, supra,* 42 Cal.3d 730, 777.) Defendant ignores these holdings. Instead, he describes the aggravating circumstances supporting a death verdict as "elements of the offense," and contends that allowing the jury to determine penalty without reaching agreement on which circumstances support its verdict violates the jury trial right guaranteed under the Sixth Amendment to the federal Constitution. We reject this contention. Because the Sixth Amendment provides no right to jury sentencing in death penalty cases (*Hildwin* v. *Florida* (1989) 490 U.S. 638, 640 [104 L.Ed.2d 728, 732, 109 S.Ct. 2055, 2057]), it does not require jury unanimity.

In *Hildwin* v. *Florida, supra,* 490 U.S. 638, 640 [104 L.Ed.2d 728, 732, 109 S.Ct. 2055, 2057], the United States Supreme Court, in discussing the Florida death penalty, rejected the premise underlying the argument that defendant makes here: "[T]he existence of an aggravating factor here *is not an element of the offense* but instead is 'a sentencing factor that comes into play only after the defendant has been found guilty.'" (*Ibid.,* quoting *McMillan* v. *Pennsylvania* (1986) 477 U.S. 79, 85-86 [91 L.Ed.2d 67, 76, 106 S.Ct. 2411], italics added.) Under the Florida statute involved in *Hildwin,* the judge, not the jury, made the factual determination of circumstances in aggravation. Nonetheless, the high court found no constitutional infirmity in this process, noting that "'there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact.'" (*Ibid.,* quoting *McMillan* v. *Pennsylvania, supra,* at p. 93 [91 L.Ed.2d at p. 81].)

In California too the mitigating and aggravating circumstances are sentencing factors rather than elements of the capital offense. (See *People* v. *Rodriguez, supra,* 42 Cal.3d 730, 778.) Accordingly, the Sixth Amendment does not require the jury to reach unanimous agreement on the sentencing factors underlying its choice of penalty. (See *Hildwin* v. *Florida, supra,* 490 U.S. 638, 640 [104 L.Ed.2d 728, 732, 109 S.Ct. 2055, 2057].)

██ Defendant further contends that the terms "criminal" and "violence" as used in section 190.3, factor (b), are unconstitutionally "vague" because they do not focus the jury's attention on specific aggravating conduct, thereby rendering the jury unable to make "a principled distinction

between those who deserve the death penalty and those who do not" as required by the Eighth Amendment. (*Lewis* v. *Jeffers* (1990) 497 U.S. 764, ___ [111 L.Ed.2d 606, 619, 110 S.Ct. 3092, 3099], citing *Spaziano* v. *Florida* (1984) 468 U.S. 447, 460 [82 L.Ed.2d 340, 352-353, 104 S.Ct. 3154].) Factor (b) allows the jury to consider "[t]he presence or absence of *criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence*" when deciding penalty. (Italics added.) We have defined "criminal activity" in factor (b) as "evidence that demonstrates the commission of an actual crime, a requirement easily verified under the definitional guidelines established by legislative bodies in this and other jurisdictions." (*People* v. *Phillips* (1985) 41 Cal.3d 29, 72 [222 Cal.Rptr. 127, 711 P.2d 423].) Moreover, we have limited admissibility of evidence of criminal activity involving force or violence under factor (b) to that involving the defendant's use of, or threatened use of, "force or violence to any person . . . ." (*People* v. *Boyd, supra,* 38 Cal.3d 762, 776.)

Under decisions of the United States Supreme Court, the Eighth Amendment's "vagueness" evaluation that defendant asks us to undertake has been applied only to statutes that govern "those circumstances that make a criminal defendant 'eligible' for the death penalty." (*Lewis* v. *Jeffers, supra,* 497 U.S. 764, ___ [111 L.Ed.2d 606, 619, 110 S.Ct. 3092, 3099].) The statute at issue here, section 190.3, does not govern those circumstances. Under the California death penalty scheme, the determination that a defendant is eligible for the death penalty is made when the jury finds the special circumstance allegation to be true. (§§ 190.1, 190.2.) Section 190.3 does not govern the circumstances making a defendant eligible for the death penalty but instead pertains to the sentencing stage at which the jury decides "from among that class [of persons eligible for the death penalty], those defendants who will actually be sentenced to death." (*Zant* v. *Stephens* (1983) 462 U.S. 862, 878 [77 L.Ed.2d 235, 251, 103 S.Ct. 2733].) Because the high court has found no constitutional defect in a statute that at the sentencing stage granted the jury "unbridled discretion in determining whether the death penalty should be imposed . . ." (*id.* at p. 875 [77 L.Ed.2d at p. 248]; *People* v. *Boyd, supra,* 38 Cal.3d 762, 773, fn. 5), we reject defendant's contention that the language of factor (b) must be evaluated under the *Lewis* v. *Jeffers* standard.

■■■ Defendant also contends that the 1978 death penalty law cannot withstand Eighth Amendment scrutiny based on its failure: (1) to designate which factors listed in section 190.3 are mitigating and which are aggravating, (2) to require a beyond-a-reasonable-doubt finding that death is the appropriate penalty, and (3) to require written findings of the aggravating

circumstances selected by the jury. As defendant concedes, we have earlier rejected identical arguments. (*People* v. *Andrews, supra,* 49 Cal.3d 200, 233; *People* v. *Allison* (1989) 48 Cal.3d 879, 898-899 [258 Cal.Rptr. 208, 771 P.2d 1294]; *People* v. *Coleman* (1989) 48 Cal.3d 112, 160 [255 Cal.Rptr. 813, 768 P.2d 32]; *People* v. *Allen* (1986) 42 Cal.3d 1222, 1285 [232 Cal.Rptr. 849, 729 P.2d 115]; *People* v. *Rodriguez, supra,* 42 Cal.3d 730, 777-779.) Defendant presents no persuasive reason for us to reconsider them here.

## H. *Cumulative Effect of Errors*

██ Defendant contends that the cumulative effect of trial court error during the penalty phase requires reversal of the death judgment. The few errors during the penalty phase were each clearly harmless; thus, even when considered together, reversal is not required.

## I. *Trial Court's Consideration of Probation Report and Statements by Relatives of the Victims When Ruling on Application to Modify the Verdict*

Before ruling on defendant's application for modification of the jury verdict of death (§ 190.4, subd. (e)), the trial court had received a probation report that included as attachments several reports pertaining to defendant's misconduct in jail. At the time of the hearing on the application to modify the verdict, the court allowed Maria Guerrero and two other relatives of the victims to make brief statements. All three said only that they were satisfied justice had been done and thanked the court. To preclude the trial court from considering the probation report or the victim statements when ruling on defendant's application, his counsel moved to strike both the probation report and the relatives' statements from the record.

Without directly addressing the motion to strike, the trial court ruled on the application to modify the jury verdict of death. The court referred to the aggravating and mitigating evidence presented at trial and, based on that evidence, denied the application to modify the verdict. Thereafter, the court arraigned defendant for sentencing and for the first time mentioned that it had read and considered the probation report. The court then expressly ruled on the motion to strike, declining to strike from the report "those portions which contain infraction reports concerning Mr. Bacigalupo's conduct in custody."

██ Defendant contends that the judgment of death must be vacated and the case remanded to the trial court to reconsider defendant's application for modification of the jury verdict of death. He asserts that, in ruling on his

application for modification of the verdict, the trial court improperly considered the statements by the victims' relatives and the probation report, which was evidence that had not been presented to the jury. The record reflects that the trial court heard the statements by the victims' relatives and must have read the probation report before ruling on the application to modify the verdict. This was error. (*People* v. *Lewis* (1990) 50 Cal.3d 262, 287 [266 Cal.Rptr. 834, 786 P.2d 892].)

We have said that when ruling on an application to modify a verdict of death, the trial court reviews only the evidence that was presented to the jury. (*People* v. *Adcox* (1988) 47 Cal.3d 207, 274 [253 Cal.Rptr. 55, 763 P.2d 906].) Of course, that evidence does not include the probation report (*ibid.*) or statements by the victim's family members made at the hearing on the application for modification of the verdict (*People* v. *Jennings* (1988) 46 Cal.3d 963, 994-995 [251 Cal.Rptr. 278, 760 P.2d 475]). We have said that the trial court should defer reading a probation report or hearing victim impact statements until after the ruling on the section 190.4, subdivision (e) application. (*People* v. *Lewis, supra,* 50 Cal.3d at p. 287.) But even when the trial court has considered such extraneous information in ruling on a defendant's application under section 190.4, subdivision (e), we assume there has been no improper influence on the court, absent specific evidence to the contrary. (*People* v. *Adcox, supra,* 47 Cal.3d at p. 274; *People* v. *Williams* (1988) 45 Cal.3d 1268, 1329 [248 Cal.Rptr. 834, 756 P.2d 221].)

Here, although extraneous information was before the trial court when it considered defendant's application for modification of the jury's verdict of death, there is nothing in the record to indicate that the court's ruling was based at all on that information. No evidence was included in the comments by the victim's relatives. Those individuals each made short statements expressing thanks that justice had been done. The reports of defendant's jail misconduct that were attached to the probation report did reveal information to the trial court that was not known to the jury. Defendant suffered no prejudice, however.

The most serious of those probation reports showed that defendant had been found in possession of homemade weapons or "shanks." Although from that information the trial court could infer that defendant posed a continuing safety threat even though in custody, the court was already aware that defendant posed a safety threat based on the penalty phase testimony of defense witness Dr. Brady, who on cross-examination alluded to earlier incidents of dangerous, antisocial behavior by defendant while in jail. Thus we need not vacate the judgment and remand for a ruling on the application for modification of the jury verdict of death. (See *People* v. *Ramirez* (1990) 50 Cal.3d 1158, 1201-1202 [270 Cal.Rptr. 286, 791 P.2d 965].)

## J. Consideration of Evidence in Mitigation When Ruling on Application to Modify Verdict

Defendant contends that in ruling on the application to modify the jury verdict (§ 190.4, subd. (e)), the trial court refused to consider any mitigating evidence presented by the defense during the penalty phase of the trial. The record belies this contention. In ruling on the application, the court stated that it had reviewed the transcript of the penalty phase and had considered all of the aggravating and mitigating evidence, but that it found no circumstances in mitigation to extenuate the gravity of the crimes. There was no error.

## K. Proportionality Review

Defendant contends that the sentence of death is arbitrary, discriminatory, and disproportionate in his case because he was only 22 years old at the time of the killings and because of the family disruptions he had suffered. He argues that to execute someone of his youth and background offends basic principles of justice, and he asks this court to conduct a comparative "intercase" review to determine if the penalty is cruel or unusual punishment under article I, section 17 of the California Constitution. He points out that under the determinate sentencing law (§ 1170, subd. (f)) other felony sentences not involving the death penalty must be reviewed by the Board of Prison Terms for determination whether a particular sentence is "disparate in comparison with the sentences imposed in similar cases." Defendant contends that principles of equal protection require this court to conduct such a comparative sentence review whenever a person has been sentenced to death. He further argues that "intercase" sentence review is essential to guard against arbitrary imposition of a death sentence in violation of the Eighth Amendment.

As we have held on many prior occasions, we do not engage in "intercase" proportionality review. (*People* v. *Hayes, supra,* 52 Cal.3d 577, 645; *People* v. *Andrews, supra,* 49 Cal.3d 200, 234; *People* v. *Rodriguez, supra,* 42 Cal.3d 730, 777-778.) Such review is not required by the Eighth Amendment. (*Pulley* v. *Harris* (1984) 465 U.S. 37, 51-54 [79 L.Ed.2d 29, 40-42, 104 S.Ct. 871].) Nor, as we have previously held, does equal protection require us to provide capital defendants with the same comparative sentence review afforded other convicted felons under the determinate sentencing law (see § 1170, subd. (f)). (*People* v. *Andrews, supra,* 49 Cal.3d at p. 234; *People* v. *Babbitt* (1988) 45 Cal.3d 660, 726 [248 Cal.Rptr. 69, 755 P.2d 253].)

But the imposition of a death sentence is subject to "intracase" review under article I, section 17 of the California Constitution, to determine

whether the death penalty is disproportionate to a defendant's personal culpability within the meaning of *People* v. *Dillon* (1983) 34 Cal.3d 441, 478-489 [194 Cal.Rptr. 390, 668 P.2d 697], and *In re Lynch* (1972) 8 Cal.3d 410, 437-439 [105 Cal.Rptr. 217, 503 P.2d 921]. Here, defendant carried out a calculated plan to accomplish a robbery, which included killing two people. One of defendant's murder victims was his personal benefactor. Although defendant was only twenty-two at the time of these killings, he already had committed an armed robbery, he had been convicted of two other felony offenses, and he had served two previous prison terms. Indeed, the double murder/robbery here took place a short time after defendant's release from prison. From our review of the facts in this case, we are convinced that the penalty is not disproportionate either to the offender or the offense.

## IV. CONCLUSION

The judgment is affirmed in its entirety.

Lucas, C. J., Panelli, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I concur in the judgment. After review, I have found no error warranting reversal.

I write separately to address an issue that underlies many penalty phase claims, in this case and in others.

There is a question whether the standard instructions that the trial court typically gives the jury on the determination of penalty are adequate to apprise the panel as to the nature of its task in situations in which evidence or argument is offered that presses against the limits of what is material to the choice of life or death.

Until recently, I believed that the answer should generally be affirmative.

Now, faced with what is likely to be the practically unimpeded introduction of so-called "victim impact" evidence and argument (see *Payne* v. *Tennessee* (1991) 501 U.S. __, __-__ [115 L.Ed.2d 720, 726-739, 111 S.Ct. 2597, 2601-2611]; *People* v. *Edwards* (1991) 54 Cal.3d 787, 832-833 [1 Cal.Rptr.2d 696, 819 P.2d 436])—which always threatens to pass the bounds of materiality and often does so—I am somewhat doubtful.

Accordingly, I would henceforth require the trial court to fully and clearly instruct the jury on the principles underlying the penalty determination. (See

generally *People* v. *Mickle* (1991) 54 Cal.3d 140, 198 [284 Cal.Rptr. 511, 814 P.2d 290] (conc. opn. of Mosk, J.); *People* v. *Cox* (1991) 53 Cal.3d 618, 702-703 [280 Cal.Rptr. 692, 809 P.2d 351] (conc. & dis. opn. of Mosk, J.); *People* v. *Gallego* (1990) 52 Cal.3d 115, 207-209 [276 Cal.Rptr. 679, 802 P.2d 169] (conc. opn. of Mosk, J.); and authorities cited therein.) Such instructions should include the following matters.

Under the 1978 death penalty law, the determination of punishment turns on the personal moral culpability of the capital defendant.

Such culpability is assessed in accordance with specified factors of "aggravation" and "mitigation": (a) the circumstances of the crime; (b) other violent criminal activity; (c) prior felony convictions; (d) extreme mental or emotional disturbance; (e) victim participation or consent; (f) reasonable belief in moral justification or extenuation; (g) extreme duress or substantial domination; (h) impairment through mental disease or defect or through intoxication; (i) age; (j) status as an accomplice and minor participant; and (k) any other extenuating fact.

For purposes here, "aggravation" means that which increases the defendant's personal moral culpability above the level of blameworthiness that inheres in the capital offense. By contrast, "mitigation" means that which reduces his culpability below that level.

Thus, the circumstances of the crime itself can be either aggravating or mitigating. Their character depends on the greater or lesser blameworthiness they reveal—ranging, for example, from the most intentional of willful, deliberate, and premeditated murders to the most accidental of felony murders.

Other violent criminal activity is similar. Its presence is aggravating, suggesting as it does that the capital offense is the product more of the defendant's basic character than of the accidents of his situation. Its absence is obviously mitigating, carrying the opposite suggestion.

So too prior felony convictions. Their existence is aggravating. They reflect on the relatively greater contribution of character than situation. Moreover, they reveal that the defendant had been taught, through the application of formal sanction, that criminal conduct was unacceptable—but had failed or refused to learn his lesson. By contrast, the nonexistence of such convictions plainly is mitigating.

The age of the defendant can also be either aggravating or mitigating. It is a metonym for a congeries of facts that bear on culpability.

The existence of any of the following circumstances, however, is mitigating and mitigating only: extreme mental or emotional disturbance; victim participation or consent; reasonable belief in moral justification or extenuation; extreme duress or substantial domination; impairment through mental disease or defect or through intoxication; status as an accomplice and minor participant; and any other extenuating fact. By contrast, the nonexistence of any of these circumstances is not and cannot be aggravating. The absence of mitigation does not amount to the presence of aggravation.

I am of the view that if the trial court instructs the jury on the foregoing matters, it will adequately inform the panel of the nature of the penalty determination—and may even avoid or at least minimize the harm of "victim impact" evidence or argument.

In conclusion, because I have found no error warranting reversal, I concur in the judgment.

Appellant's petition for a rehearing was denied January 30, 1992.