Filed 3/26/14  P. v. Chavez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JORGE CHAVEZ,<br><br>  Defendant and Appellant. | F064866<br><br>(Super. Ct. No. MCR041835)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Julie Dunger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carol A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Jorge Chavez (Chavez) of two counts of robbery. The jury also found that he personally used a dangerous and deadly weapon in the commission of the offenses. Chavez raises several challenges to his convictions and his sentence, including claims of ineffective assistance of counsel, evidentiary and instructional error, error under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), improper dual use of facts at sentencing, and error in the abstract of judgment.

We reject all of Chavez's contentions except those pertaining to the sentencing and abstract of judgment issues. Consequently, we will remand the case for resentencing and correction of any errors in the abstract of judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Paradise Market is located on the corner of Vineyard and 6th Street in Madera. On the evening of August 26, 2011, Victor Cortez Delarosa purchased beer and items with which to make soup. As he was walking home down an alley, two Hispanic juvenile males approached him and demanded his wallet. He claimed he did not have it with him, and one of the juveniles, 16-year-old Chavez, displayed a switchblade knife, scaring Delarosa. Chavez grabbed the beer and fled.

Nearby, Misrael Jimenez Hernandez was purchasing a burrito from a taco truck parked across the street from Paradise Market. After completing his purchase, he walked down an alley towards his home. Chavez and another male approached Hernandez and Chavez demanded his money. Hernandez offered to give each of them $10 if they left him alone. Chavez asked Hernandez how much money he had, to which he replied he had $40.

Hernandez took a step back and tried to walk away but the other male blocked his path. Chavez pulled out a switchblade knife with a blade that was three to five inches long and acted as if he was going to stab Hernandez. Scared, Hernandez handed over all his money. Chavez and the other juvenile fled the scene.

2.

Hernandez immediately called 911 on his cell phone. Officer Josiah Arnold of the Madera Police Department arrived shortly thereafter. Hernandez reported that the two juveniles who had robbed him ran into a house at 127 1/2 Sycamore Street, which was Chavez's residence. While Arnold interviewed Hernandez, another officer called on his radio to tell Arnold that one of the suspects was headed his way.

Arnold saw Chavez run by 127 1/2 Sycamore Street, and Arnold ordered him to get on the ground. As he was being apprehended, Chavez threw something behind him. Chavez was wearing clothing that was consistent with the description provided by Hernandez, and later Delarosa. Arnold placed Chavez under arrest. Chavez's companion, Angel H., ran around the corner but was apprehended and arrested.

Officer Hector Garibay issued the advisements pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 to Chavez, and Chavez waived his *Miranda* rights. Garibay asked Chavez if he was willing to apologize to Hernandez; Chavez said he would if Garibay let him. Garibay asked Chavez what had happened and Chavez stated, "We robbed him." Chavez claimed he did it because he "was bored" and that he took about $40 from Hernandez.

While officers were investigating the robbery against Hernandez, Delarosa approached Garibay and reported that he had been robbed. Officer Robert Hill took a report from Delarosa with the help of a Spanish interpreter. Delarosa nodded toward the police cruiser and indicated the two juveniles in police custody were the perpetrators. Delarosa identified Chavez as the one who had wielded the knife. Delarosa told Hill he did not want to testify against Chavez; he was concerned because Chavez lived across the alley from him.

Officer Josh Chavez also interviewed Chavez. The officer asked where the knife was and whether Chavez would turn it over to law enforcement. Chavez took officers to his home, retrieved the knife, and turned it over.

3.

Hernandez subsequently identified the knife as the one that had been used against him in the robbery and identified Chavez as the one who had wielded the knife. Hernandez also identified Chavez at trial as one of the robbers.

The information filed by the prosecution charged Chavez with two counts of robbery, violations of Penal Code section 211,[1] and that he personally used a dangerous and deadly weapon in the commission of the offenses, in violation of section 12022, subdivision (b)(1). The information also alleged that Chavez was at least 16 years old at the time of the commission of the offenses, and, pursuant to Welfare and Institutions Code section 707, subdivision (d)(1), he should be deemed unfit for treatment as a juvenile.

The trial began on February 15, 2012, and on February 23, 2012, the jury convicted Chavez of both charges and found the enhancements true. On April 26, 2012, Chavez asked the trial court to appoint substitute counsel so he could file a motion for new trial on the basis of ineffective assistance of counsel. The trial court conducted a *Marsden* hearing and denied the request.

Chavez was sentenced to a term of five years on count 1, one-third the midterm on count 2 (one year), one year for the deadly weapon enhancement appended to count 1, and four months for the weapon enhancement appended to count 2, for a total term of seven years four months. The trial court ordered Chavez to be housed at the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) (formerly the California Youth Authority) until his 18th birthday.

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

# DISCUSSION

Chavez raises multiple challenges to his convictions. He contends the trial court erred in the admission of evidence by allowing hearsay testimony and testimony that he belonged to a gang and committed prior uncharged acts. Chavez also contends defense counsel was ineffective in his handling of the evidentiary issues, in failing to request the trial court instruct the jury with CALCRIM No. 375, and by failing to move for a mistrial. Chavez further contends the trial court erred in failing to instruct with CALCRIM No. 375, in denying his *Marsden* motion, and in violating the dual use of facts rule in sentencing. Finally, Chavez contends the abstract of judgment contains clerical errors, a point the People concede.

## I.      Prior Crimes and Gang Evidence

Chavez contends the trial court erred prejudicially in allowing testimony by Hernandez that Chavez was a gang member and had committed prior uncharged acts. He also challenges testimony from law enforcement officers about prior robberies in the area and prior police contacts.

### Standard of Review

The standard of review for the admission of evidence is abuse of discretion. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) A judgment shall not be set aside because evidence was erroneously admitted unless, after an examination of the entire cause, we conclude there has been a miscarriage of justice. (Cal. Const., art. VI, § 13.) A miscarriage of justice occurs if it is reasonably probable the defendant would have received a more favorable result had the error not occurred. (*People v. Breverman* (1998) 19 Cal.4th 142, 149.)

### Factual Summary

When Hernandez testified, he mentioned there had been prior robberies in the area and stated, "I was walking through the alley. In front of me I saw three subjects well, and more or less I kind of had the idea because I had been held up before by them." Defense

5.

counsel objected, the trial court sustained the objection, struck the last part of Hernandez's answer, and instructed the jury to disregard the comment.

Later in his testimony, Hernandez stated he did not give police officers his correct name at the time of the robbery because he feared retaliation from "the guy's gang." Defense counsel again objected, but the trial court overruled the objection. The trial court, however, did admonish the jury as follows:

> "It's what was in his mind and it goes to fear so it is relevant but, ladies and gentlemen, it's -- to be real clear, there's no allegations that the defendant is in a gang. And so you can consider it for his fear, but please do not in any way think that because Mr. Hernandez said that that the defendant is in a gang."

Still later Hernandez testified that he had lived in the neighborhood for about a year prior to the robbery and had seen Chavez during that time. When asked how many times he had seen Chavez, Hernandez stated, "Well, with the gangs and stuff, I can't say that I have seen him face to face .…" Hernandez testified he had seen Chavez three times, always with other people. Defense counsel asked, "That was about three times while they're robbing other people?" Hernandez responded, "No. I have never said that they have been robbing other people."

Hernandez also testified that the males he saw in the alley the night he was robbed were "cholos," which he defined as "a group of gangs." Hernandez also stated the police officer asked him "what kind of people [he] thought they were." He told the officer "they were like gangsters like from that one gang," and he named the Sureños. After this exchange, the trial court admonished the jury:

> "Ladies and gentlemen, once again, I will just point out that this -- I am allowing this not to show that the defendant was in a gang because that's not even an issue before us, it's just to show that this -- what this witness was thinking and why he may have done certain things and that's the sole reason I am allowing it."

6.

During defense counsel's examination of Arnold, Arnold stated, in response to a question, that some descriptive information about Chavez was not in the report of the incident but might be in an "M and I record."  Arnold also made a comment to the effect, "If it's his first contact, I would have written it."  The terms "M and I record" and "first contact" were not explained.  Officers Garibay and Hill testified that prior robberies in the alley had resulted in increased patrols in the area.

*Analysis*

Chavez claims the trial court's admonitions were insufficient because the trial court failed to admonish the jury "concerning the evidence of prior assault[,] which sent Hernandez to the hospital, the prior assault in which Hernandez's friend was pistol whipped[,] or the prior robberies committed by [Chavez]."  He also contends the testimony from officers about prior contacts was prejudicial error.  Chavez, however, has forfeited this contention because he failed to request any additional admonitions in the trial court or move to strike the testimony.  (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 142 (*Bacigalupo*).)

Chavez also argues that allowing Hernandez to refer to gangs in his testimony, plus the testimony from officers about prior "first contact" with law enforcement, was prejudicial error.  Chavez is incorrect.  The trial court admonished the jury twice that there was no evidence Chavez was in a gang, gang membership was not an issue in the case, and the testimony was being offered solely for the purpose of explaining Hernandez's actions and his state of mind.  We presume the jury followed the trial court's admonitions and instructions.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 669.)

As for Garibay's and Hill's comments about other robberies in the area, those comments were brief and were offered to explain their rapid arrival on the scene a mere 30 seconds or so after the 911 call.

Again, with respect to the challenged testimony from Garibay, Hill, and Arnold, no objection was interposed and no motion to strike the testimony was made.  Therefore,

7.

any challenge to this testimony is forfeited for purposes of appeal. (*Bacigalupo, supra,* 1 Cal.4th at p. 142.)

We also conclude there was no ineffective assistance of counsel for failing to object because Chavez suffered no prejudice. (See *People v. Hamilton* (1988) 45 Cal.3d 351, 377 [to establish ineffectiveness of counsel, defendant must show both deficient performance and prejudice].) To establish prejudice, the defendant must make a showing "sufficient to undermine confidence in the outcome" as there is a "reasonable probability" that but for counsel's performance "the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 693-694.) A reviewing court can adjudicate an ineffective assistance claim solely on the issue of prejudice without evaluating counsel's performance. (*Id.* at p. 697.)

We conclude there was no prejudice for two reasons. First, there was no testimony from Hernandez or anyone else that Chavez had been responsible for any prior assault on Hernandez, the pistol whipping of Hernandez's friend, or that Chavez had robbed anyone previously. Hernandez testified that prior to the instant offense, Chavez had never threatened him or asked him for money. Thus, no further admonition was needed because Chavez's factual assertions here are incorrect and do not provide a basis for his claim.

Second, the evidence of Chavez's guilt was overwhelming. Chavez confessed to Garibay that he had committed a robbery and had taken about $40 from the victim. The amount Chavez admitted taking was the amount taken from Hernandez. Chavez turned over to police the knife he used during the robbery, and Hernandez identified that knife as the one used in the robbery. Also, Chavez was apprehended at the location where Hernandez saw the robbers head after committing the robbery. In addition, Delarosa accurately described Chavez to police officers and later identified Chavez as the person who had robbed him at knife point.

8.

Under these facts, any error in admission of the testimony is not prejudicial as it is not reasonably probable a result more favorable to Chavez would have been achieved in the absence of the challenged testimony. (*People v. Welch* (1999) 20 Cal.4th 701, 749-750.)

## II.    Prior Identification Evidence

Chavez contends that allowing Garibay to testify to Delarosa's identification of him shortly after the robbery, when Delarosa would not identify him at trial, constitutes erroneous admission of hearsay. Again, Chavez's failure to interpose a hearsay objection forfeits this issue for purposes of appeal. (*People v. Wheeler* (1992) 4 Cal.4th 284, 300.) Although the issue is forfeited, we briefly address the merits of the contention because of Chavez's claim of ineffective assistance of counsel.

### *Analysis*

At trial, Delarosa described the two people who had robbed him, but he did not identify Chavez as one of the robbers. Delarosa conceded he was shown one suspect (Angel H.) in a patrol car the night of the robbery. He neither admitted nor denied identifying that person as one of the perpetrators, and he denied being shown a second suspect (Chavez).

Later, Garibay testified that Delarosa identified the robbers the night of the robbery. Hill testified that on the night of the robbery, Delarosa identified Chavez as the robber who had wielded the knife. Hill also testified that Angel H. was the perpetrator in the patrol car at the time Delarosa identified Chavez.

Here, Delarosa's denial at trial that he was shown a second suspect the night of the robbery contradicted his statements the night of the robbery identifying Chavez as one of the robbers. As such, Delarosa's out-of-court statements were admissible as prior inconsistent statements under Evidence Code section 1235. (*People v. Homick* (2012) 55 Cal.4th 816, 859.) Consequently, the trial court did not err in admitting the prior statements made by Delarosa.

9.

Chavez's claim that his counsel was ineffective for failing to object to this testimony also fails. Counsel is not required to make futile objections or advance meritless arguments in order to avoid a claim of ineffective assistance. (*People v. Diaz* (1992) 3 Cal.4th 495, 562 (*Diaz*); *People v. Jones* (1979) 96 Cal.App.3d 820, 827.)

## III. CALCRIM No. 375

Chavez contends the trial court had a sua sponte duty to instruct the jury with CALCRIM No. 375 (evidence of uncharged offense to prove identity, intent, common plan). We disagree.

Except in extraordinary cases, a trial court, as a general rule, has no duty to give a sua sponte limiting instruction. (*People v. Rogers* (2006) 39 Cal.4th 826, 864.) A narrow exception to the rule exists where "'evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose.'" (*Ibid.,* quoting *People v. Collie* (1981) 30 Cal.3d 43, 64.) This case does not present an extraordinary situation.

Here, contrary to Chavez's assertion, there was no testimony that Chavez was a gang member or that he committed a prior offense. The testimony from Hernandez, Garibay, and Hill about other robberies in the area did not link these robberies to Chavez. Hernandez mentioned the other robberies to explain his fear and his actions, but he specifically testified that prior to the charged offense, Chavez had never threatened him or asked him for money. The officers mentioned the crime in the area to explain the unusually rapid response to the 911 call. Moreover, the trial court twice instructed the jury on the limited use of the testimony and specifically stated there was no evidence that Chavez was in a gang.

Nor was defense counsel ineffective for failing to request CALCRIM No. 375, as Chavez can show no prejudice. The requisite showing is lacking since (1) the instruction was inapplicable, and (2) even if Chavez's attorney had requested CALCRIM No. 375, the outcome of the proceeding would have been the same as discussed *ante* in part I.

## IV.    Motion for New Trial

Chavez raises three related contentions around a motion for new trial:  (1) defense counsel was ineffective for failing to move for a new trial; (2) the trial court erred in denying his motion for substitute counsel to file a new trial motion; and (3) the trial court erred by proceeding to judgment without considering his motion for new trial.  All of these contentions fail.

### *Factual Summary*

Prior to sentencing, defense counsel informed the trial court that Chavez wanted to move for a new trial based on ineffective assistance of counsel.  The trial court conducted a hearing pursuant to *Marsden, supra,* 2 Cal.2d 118, outside the presence of the prosecutor.  During the *Marsden* hearing, the trial court asked Chavez why he wanted to file for a new trial.  Chavez responded, "I don't know."  The trial court then asked Chavez why he thought his attorney had not done a good job.  Chavez had no response.

Defense counsel then proceeded to respond for Chavez.  Defense counsel stated that Chavez had asked him to try and obtain a plea agreement so that Chavez pled to a nonstrike offense, or, alternatively, to obtain a commitment to the local juvenile hall if he pled to a strike offense.  Defense counsel indicated that Chavez had wanted to avoid a commitment to state prison or to the California Youth Authority; Chavez wanted only a commitment to the local juvenile hall.  The trial court informed counsel that there was no such thing as the California Youth Authority.

Defense counsel proceeded to state that Chavez would have accepted the offer of two years on a strike offense if he could serve his time in the local juvenile hall.  Defense counsel also stated, "And as it turns out, his sentence is going to be in juvenile hall until he turns 18."  Defense counsel admitted, however, that negotiations broke down with the district attorney's office and all offers had been withdrawn.

After defense counsel finished his comments, the trial court again asked Chavez why he wanted a motion for a new trial.  Chavez did not respond.  The trial court again

11.

asked Chavez why he felt defense counsel had been ineffective; again, Chavez did not respond. The trial court then denied the *Marsden* motion.

### *Analysis*

Chavez argues the trial court abused its discretion in denying his *Marsden* motion. We disagree. A defendant is entitled to substitute counsel if the record shows that counsel is not providing adequate representation, or that the defendant and his counsel have become embroiled in such an irreconcilable conflict that ineffective representation likely will result. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085 (*Barnett*).)

Here, when asked, Chavez had no response as to why he wanted to file a motion for new trial or why he felt defense counsel was ineffective. Defense counsel then stated that the prosecution had offered to allow Chavez to plead guilty to a strike offense with a two-year lid. Defense counsel informed Chavez the time would not be served in a local commitment; Chavez rejected the offer. Defense counsel then opined that his representation had been deficient because Chavez would have been eligible to serve his two-year term in a local commitment in juvenile hall.

Contrary to defense counsel's statement, the prosecution never offered a plea agreement that called for serving time in a local facility. As Chavez concedes on appeal, defense counsel's comment during the *Marsden* hearing that serving a two-year commitment with the DJJ meant the two years would be served in a local juvenile hall was factually incorrect. This did not constitute a showing that defense counsel's representation was deficient or that Chavez and his counsel were embroiled in an irreconcilable conflict. (*Barnett, supra* 17 Cal.4th at p. 1085.) All it established was that Chavez *wanted* local commitment time, which was never offered by the prosecution.

Chavez asserts the *Marsden* motion should have been granted because defense counsel affirmatively advised him not to accept the plea agreement that called for a plea to a strike offense with a two-year lid. Not so. There is no evidence whatsoever of this advice in the record.

12.

Also, Chavez failed to assert this ground at the *Marsden* hearing. When asked, Chavez had no comment to make as to why defense counsel was ineffective and why he needed new counsel to file a motion for new trial. The trial court was not obligated sua sponte to engage in a fishing expedition to try and elicit a comment from Chavez. (*People v. Lara* (2001) 86 Cal.App.4th 139, 151-152.) Chavez twice was asked to articulate his reasons and failed to respond. If Chavez now contends he was advised not to accept the plea, such a contention should be raised in a petition for writ of habeas corpus. (*Diaz, supra,* 3 Cal.4th at pp. 557-558.)

We also reject Chavez's contention the trial court erred by proceeding to judgment without considering his motion for new trial. There can be no error when no motion for new trial was filed or orally requested. Failure to move for a new trial prior to pronouncement of judgment constitutes a waiver of the right to a new trial. (*People v. Braxton* (2004) 34 Cal.4th 798, 813-815.)

Chavez, however, contends that any right to file a new trial motion is not waived and the issue is not forfeited on appeal because he sought appointment of substitute counsel based on ineffective assistance of counsel, which was denied. We disagree. As we concluded that Chavez's motion for substitute counsel was properly denied, this reason to revive a failure to file a motion for new trial fails. Regardless, any motion for new trial lacked merit and defense counsel was not ineffective for failing to bring a meritless motion. (*Diaz, supra,* 3 Cal.4th at p. 562.) Defense counsel discussed the terms of the plea offer with Chavez, conveyed the offer to plea to a strike offense with a two-year lid, and attempted to negotiate a plea for a nonstrike offense and local commitment time. The record reflects defense counsel was unable to obtain an offer with the parameters Chavez found acceptable.

V.    **No Cumulative Error**

Chavez maintains the cumulative effect of his claims of error surrounding the admission of evidence, instructional issue, and new trial are such that his right to due

process was denied and a reversal of his convictions is warranted. Having concluded there were no errors, or any errors were harmless, we conclude there was no cumulative error that deprived Chavez of due process. (*People v. Vieira* (2005) 35 Cal.4th 264, 294.)

**VI.    Dual Use**

Chavez contends the trial court impermissibly made dual use of facts at sentencing. The People contend this issue is forfeited, but concede that the trial court impermissibly made dual use of facts. We conclude the issue is not forfeited; therefore, we will remand for resentencing.

The probation report listed two aggravating factors: (1) Chavez engaged in violent conduct that indicated a danger to society, and (2) Chavez was on juvenile deferred entry of judgment for battery with serious bodily injury at the time he committed the current offense. The probation officer opined there were no mitigating factors.

At sentencing, the prosecutor argued for the upper term of imprisonment to be imposed and contended additional aggravating factors, other than those listed by the probation officer, were present. Defense counsel argued there were mitigating factors and, after probation was denied, urged the trial court to select the midterm.

With respect to imposition of the aggravated or upper term sentence, defense counsel twice argued that the trial court could not use the fact Chavez was armed with a weapon, the knife, both to aggravate the sentence and to impose a weapon enhancement. Defense counsel specifically objected that the probation report used the fact Chavez was armed with a knife as the basis for one of its aggravating factors and as the basis for imposing a weapon enhancement. Although the trial court indicated it agreed and stated it would not use the fact Chavez was armed with a weapon to aggravate any of the offenses, it proceeded to do exactly that, as the People concede.

The trial court stated two reasons for imposing the aggravated term: (1) the offense involved a threat of great bodily harm, and (2) Chavez engaged in violent conduct that was a danger to society. The second factor cited by the trial court was the

14.

same aggravating factor set forth in the probation report, to which defense counsel objected as a dual use of facts if also used to impose a weapon enhancement.

Both factors cited by the trial court, as the People concede, must be based factually on Chavez's use of a knife. Chavez did not engage in any physical altercation with the victims, other than the wielding of a knife. Thus, the use of the knife constitutes the factual basis for the finding the crime involved a threat of great bodily harm.

Additionally, the use of the knife by Chavez seems to be the only factual basis for the finding that, in the commission of the current offense, Chavez engaged in violent conduct that posed a danger to society. Where a defendant's use of a weapon is used as a factual basis for imposition of an aggravated term, as well as imposition of a weapon enhancement, it constitutes an impermissible dual use. (*People v. Arbee* (1983) 143 Cal.App.3d 351, 356.)

Although the probation report and the prosecutor cited other facts that could be used to support an aggravated term, the trial court did not refer to them when imposing sentence. We are unable to determine on this record whether the trial court would impose a different term, or rely on other factors referred to by the prosecutor and probation officer to impose an aggravated term. Consequently, we will remand for resentencing. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1027-1028.)

## VII.    Correction of Abstract of Judgment

Chavez points out that the abstract of judgment does not reflect the trial court's oral pronouncement of sentence accurately. He is correct. The People agree the abstract of judgment should be amended to conform to the oral pronouncement. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.)

The term imposed for the section 12022, subdivision (b)(1) enhancement can be corrected at the time of sentencing after remand.

15.

**DISPOSITION**

The convictions and true findings are affirmed.  The matter is remanded to the trial court for resentencing and preparation of a corrected abstract of judgment.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
PEÑA, J.

16.