Filed 8/20/14  P. v. Lazaro CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B248846 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA403656) |
| v. | |
| RAMIRO LAZARO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Sam Ohta, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, William N. Frank, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

A jury found defendant and appellant Ramiro Lazaro (defendant) guilty of forcible oral copulation and forcible sexual penetration of a child under the age of 14 who was seven or more years younger than defendant, as well as attempted forcible rape. On appeal, defendant contends that the trial court committed prejudicial error when it failed sua sponte to instruct the jury on what defendant claims are the lesser included offenses of nonforcible oral copulation and nonforcible sexual penetration of a child under the age of 14 who was more than 10 years younger than defendant. He also contends that he received ineffective assistance of counsel and that the trial court imposed unauthorized restitution and parol revocation fines.

We hold that nonforcible oral copulation of a child and nonforcible sexual penetration of a child are not lesser included offenses to forcible oral copulation of a child and forcible sexual penetration of a child. Moreover, even if the trial court erred as claimed when it failed to instruct the jury on the purported lesser included offenses, defendant was not prejudiced by that error. And, because the trial court did not commit prejudicial error as claimed by defendant, we also reject defendant's alternative claim of ineffective assistance of counsel for similar reasons. We also hold that defendant forfeited his claim concerning the restitution and parole revocation fines imposed by the trial court. We therefore affirm the judgment of conviction.

# FACTUAL BACKGROUND

The victim and complaining witness, Tracy R., was born in 1995. Defendant was born in August 1977, i.e., he was well over 10 years older than Tracy. Defendant, who was married to Tracy's aunt, lived with Tracy's grandmother where Tracy and her mother also lived from the time Tracy was 10-years-old until she was 13-years-old.

While Tracy was living at her grandmother's house with defendant, he would take her, her younger siblings, and his two daughters to the park every weekend. At some

2

point during the weekend visits to the park, while the other children were playing, defendant began to talk to Tracy about "sex and stuff." Later, defendant began showing Tracy his "private parts" and video pornography. Defendant told Tracy that sex was normal and "it was ok to do," explaining that "if [she] wanted to [have sex], he would always be there." Defendant assured Tracy that sex "wouldn't hurt" and that "once [his penis[1] was] in there, . . . [she] would just bleed a bit and . . . to keep going, that it was okay."

During one incident at the park, while the younger children were playing, Tracy was alone in the car with defendant. Defendant grabbed Tracy's arm and pulled her hand toward his penis. Tracy told defendant that she "didn't want to," but he nevertheless forced her hand to touch his penis.

At some point, Tracy's aunt, who had been ill, passed away and defendant moved from Tracy's grandmother's house. Once defendant moved, he would pick up his daughters and Tracy at her grandmother's house and visit the park. Defendant continued to talk to Tracy about sex, which made her angry and confused.

On the occasion on which the incident underlying the charged crimes occurred, Tracy, who was then 13-years-old, and her younger siblings visited defendant at his residence. He instructed the younger children to play outside and asked Tracy to come inside and help him prepare the food. Tracy followed defendant upstairs to a single room that served as both a kitchen and defendant's room. While Tracy sat on defendant's bed waiting for him to bring out the food, defendant closed and locked the door and then "pushed" Tracy down on the bed. Defendant pulled down Tracy's shorts and underwear, and "opened [Tracy's] legs like wide open . . . ." Tracy was "in shock" and felt "scared." She tried but was unable to pull her shorts back up. Defendant "suddenly put [two fingers] inside of [Tracy's] vagina." Defendant was "sliding [his fingers] up and down." Defendant explained to Tracy in Spanish, "'This is what [his penis] would feel like.'" He

---

[1] According to Tracy, defendant used the Spanish term "pito," which she said means penis.

3

assured her "that it wouldn't hurt, that it was alright for [her] to do it." Defendant began to "lick" Tracy's vulva as she tried to push him away. Defendant next "grabbed" his erect penis and tried to "put it inside [Tracy]." Defendant's penis made contact with "the outside of [Tracy's] vagina," but because she was physically resisting, it did not penetrate her. When Tracy's cousin knocked on the door, Tracy put on her shorts and ran out of the room. Tracy did not immediately inform anyone about the incident because she felt bad about her aunt—defendant's wife—who had passed away. Tracy never went back to defendant's home.

After the incident in defendant's room, Tracy and her mother moved to their own apartment, and defendant and his two daughters moved back into Tracy's grandmother's home. She and her mother would visit her grandmother every Sunday for dinner. One Sunday, Tracy's mother, who did not know about the prior incident at defendant's residence, left her and her younger siblings with defendant at her grandmother's house. When Tracy went to the bathroom, defendant began knocking "hard" on the locked door. Tracy was scared and called out to her cousin. Defendant broke the lock on the bathroom door, grabbed Tracy by the arm, and told her to kiss him. Tracy refused, and her cousin pulled her away from defendant and screamed, "'Let her go[,] let her go.'" The girls broke away from defendant and ran outside. Tracy did not tell her mother about the incident because defendant was always nice around her parents and, as a result, they would not believe her.

After the incident in the bathroom, Tracy would frequently see defendant as she was going to and coming from high school. He would call her a prostitute and a whore. Defendant would also take pictures of Tracy and her friends and send them to her parents. Once when Tracy was at McDonald's with a "close guy friend," defendant parked in front of the restaurant and took pictures of them. He told Tracy he was going to show them to her mother and prove Tracy had a boyfriend.

On another occasion, as Tracy was walking home, defendant parked his car near her location. She told defendant to stop following her and that she was going to tell her mother about him. Defendant replied, "'Go for it, tell her,'" as if he was not "scared."

4

After Tracy and her mother finally confronted defendant about his conduct with Tracy, she began to feel "really badly." She became so sad that she took a bottle of pills in an attempt to hurt herself.

Six-year-old Y.C. testified about an incident of sexual misconduct that she experienced at defendant's residence. According to Y.C., defendant's daughters invited then five-year-old Y.C. to play at their house. While she was there, defendant took off her clothes and took a picture of her. Defendant also touched and "opened" Y.C.'s "private part" with his fingers. Defendant then "twisted" her private part causing pain and fear. Y.C. went home and told her mother and uncle what had happened. Y.C. was evaluated by a sexual assault team, but there were no findings. DNA was extracted from Y.C. and defendant, but there was no male DNA found on Y.C. The Los Angeles Police Department seized and analyzed defendant's cell phone, but no photographs were found.

In a tape recorded interview with police, defendant told detectives that Tracy "would come on to him a lot." Among other things, she said, "Do whatever you want with me, just don't get me pregnant." Defendant denied having intercourse with Tracy, or inserting his fingers or tongue inside her vagina. Defendant admitted touching her vagina with his tongue one time because she asked him to do that to her. Defendant also admitted that he had touched Tracy's vagina with his fingers on two separate occasions. According to defendant, Tracy was a "crazy girl."

## PROCEDURAL BACKGROUND

In an amended information, the Los Angeles County District Attorney charged defendant in count 1 with aggravated sexual assault of a child—oral copulation—in violation of Penal Code section 269, subdivision (a)(4)[2]; in count 2 with aggravated sexual assault of a child—sexual penetration—in violation of section 269, subdivision

---

[2]    All further statutory references are to the Penal Code, unless otherwise indicated.

(a)(5); and in count 3 with attempted forcible rape in violation of sections 664 and 261, subdivision (a)(2). Defendant pleaded not guilty.

Following trial, the jury found defendant guilty as charged. The trial court sentenced defendant to consecutive terms of 15 years to life on counts 1 and 2 and stayed the sentence on count 3 under section 654. The trial court also ordered defendant, inter alia, to pay a $280 restitution fine under section 1202.4, subdivision (b) and a $280 parole revocation restitution fine under former section 1202.45.

## DISCUSSION

### A. Instructions on Lesser Included Offenses

Defendant contends that the trial court committed prejudicial error when it failed sua sponte to instruct the jury that nonforcible oral copulation of a child in violation of section 288a, subdivision (c)(1) and nonforcible sexual penetration of a child in violation of section 289, subdivision (j) were lesser included offenses of the crimes charged in counts 1 and 2, i.e., forcible oral copulation of a child in violation to section 269, subdivision (a)(4) and forcible sexual penetration of a child in violation of section 269, subdivision (a)(5), respectively. According to defendant, based on his statements to police that his admitted oral and digital contact with Tracy's genitals was consensual, the jury could have convicted him of nonforcible oral copulation and nonforcible sexual penetration and acquitted him of forcible oral copulation and forcible sexual penetration.

We hold that nonforcible oral copulation of a child in violation of section 288a, subdivision (c)(1) and nonforcible sexual penetration of a child in violation of section 289, subdivision (j) are not lesser included offenses of the crimes charged in counts 1 and 2. Moreover, even if nonforcible oral copulation of a child and nonforcible sexual penetration of a child are lesser included offences to the charged crimes, any error in failing to give a lesser-included instruction was harmless.

6

### 1. Legal Principles

"A trial court has a sua sponte obligation to instruct the jury on any uncharged offense that is lesser than, and included in, a greater charged offense, but only if there is substantial evidence supporting a jury determination that the defendant was in fact guilty only of the lesser offense. (*People v. Waidla* (2000) 22 Cal.4th 690, 733 [94 Cal.Rptr.2d 396, 996 P.2d 46]; *People v. Bacigalupo* (1991) 1 Cal.4th 103, 127 [2 Cal.Rptr.2d 335, 820 P.2d 559], vacated on other grounds in *Bacigalupo v. California* (1992) 506 U.S. 802 [121 L.Ed.2d 5, 113 S.Ct. 32]; see *People v. Breverman* (1998) 19 Cal.4th 142, 154-155 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) An uncharged offense is included in a greater charged offense if *either* (1) the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), *or* (2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test). (*People v. Wolcott* (1983) 34 Cal.3d 92, 98 [192 Cal.Rptr. 748, 665 P.2d 520]; *People v. Barrick* (1982) 33 Cal.3d 115, 133 [187 Cal.Rptr. 716, 654 P.2d 1243]; see *People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228 [45 Cal.Rptr. 3d 353, 137 P.3d 184].)" (*People v. Parson* (2008) 44 Cal.4th 332, 348-349.)

"Under the elements test, a court determines whether, as a matter of law, the statutory definition of the greater offense necessarily includes the lesser offense. [¶] Under the accusatory pleading test, a court reviews the accusatory pleading to determine whether the facts actually alleged include all of the elements of the uncharged lesser offense; if it does, then the latter is necessarily included in the former. (*People v. Reed, supra*, 38 Cal.4th at pp. 1227-1228.)" (*People v. Parson, supra*, 44 Cal.4th at p. 349.) But, when the accusatory pleading merely tracks the language of the statute under which the defendant is charged, we employ only the elements test to determine the lesser included offense issue. (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)

### 2. Analysis

The statutory definitions of forcible oral copulation of a child and forcible sexual penetration of a child, as charged in counts 1 and 2, both require that the victim must be

"seven or more years younger than" the defendant.[3] By contrast, the versions of sections 288a, subdivision (c)(1)—nonforcible oral copulation of a child—and 289, subdivision (j)—nonforcible sexual penetration of a child—in effect when defendant committed the crimes each required that the victim be "more than ten years younger than" the defendant.[4]

Under these statutory definitions, a defendant who was seven, eight, nine, or ten years older than the victim at the time the alleged crimes occurred could have violated section 269, subdivision (a)(4) and (5) without violating either section 288a, subdivision (c)(1) or section 289, subdivision (j) because those two latter statutory definitions require that the defendant be more than ten years older than the victim. Thus, under the elements test, neither section 288a, subdivision (c)(1) nor section 289, subdivision (j) was a lesser included offense to the crimes charged under section 269, subdivision (a)(4) and (5). Moreover, because the accusatory pleading in this case, in essence, tracked the statutory language of the crimes charged[5] under section 269, subdivision (a)(4) and (5), we do not

---

[3]  Section 269, subdivision (a)(4) and (5) provides: "a)  Any person who commits any of the following acts upon a child who is under 14 years of age and *seven or more years younger* than the person is guilty of aggravated sexual assault of a child: [¶] . . . [¶] (4)  Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a. [¶]  (5)  Sexual penetration, in violation of subdivision (a) of Section 289." (Italics added.)

[4]  Former section 288a, subdivision (c)(1), in effect between 2007 and 2009, provided:  "Any person who participates in an act of oral copulation with another person who is under 14 years of age and *more than 10 years younger* than he or she shall be punished by imprisonment in the state prison for three, six, or eight years." (Italics added.)  Former section 289, subdivision (j) provided:  "Any person who participates in an act of sexual penetration with another person who is under 14 years of age and who is *more than 10 years younger* than he or she shall be punished by imprisonment in the state prison for three, six, or eight years." (Italics added.)

[5]  Although the language of the accusatory pleading does not repeat verbatim the language of the statute, it restates the essential elements of the crimes without any additional factual allegations, such as, for example, allegations establishing defendant's age at the time he committed the crimes.

8

need to resort to a separate analysis under the accusatory pleading test. (*People v. Shockley, supra*, 58 Cal.4th at p. 404.)

### 3. Harmless Error

Even if the trial court had a sua sponte duty to instruct on the purported lesser included offenses, its failure to do so did not prejudice defendant because, given the strength of the evidence against him, it was not reasonably probable that he would have obtained a more favorable outcome if the instructions had been given. Thus, the claimed error was harmless.

"[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v*.] *Watson* [(1956) 46 Cal.2d 818]. A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred ([*People v.*] *Watson*, *supra*, 46 Cal. 2d 818, 836)." (*People v. Breverman, supra,* 19 Cal.4th at p. 178.)

"Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result. Accordingly, a determination that a duty arose to give instructions on a lesser included offense, and that the omission of such instructions in whole or in part was error, does not resolve the question whether the error was prejudicial. Application of the *Watson* standard of appellate review may disclose that, though error occurred, it was harmless." (*People v. Breverman, supra,* 19 Cal.4th at pp. 177-178.)

9

Based on Tracy's testimony and the corroborating testimony of Y.C., there was strong evidence supporting the judgment. Defendant, over a period of time, attempted to entice Tracy into engaging in a consensual sexual relationship, and when she resisted, he resorted to force. Prior to the incident at defendant's residence upon which the charges against him were based, he repeatedly assured Tracy that sex was normal, would not hurt, and that he was ready and willing to engage in sex with her. In addition to showing Tracy pornographic videos and his "private parts," defendant on at least one occasion at the park exposed himself to Tracy and forced her to touch his penis.

Moreover, during the incident at defendant's residence upon which the charges were based, Tracy testified that defendant pushed her down on his bed, forcibly pulled down her shorts and underwear, forced her legs apart, and engaged in oral copulation, digital penetration, and attempted intercourse, all against her will and physical resistance. Following the incident at his residence, defendant forcibly entered the locked bathroom at Tracy's grandmother's house, grabbed her by the arm, and attempted to kiss her against her will. Thereafter, defendant stalked Tracy, took photographs of her and her friends, and called her a prostitute and whore. There was also evidence by other witnesses concerning defendant's actions towards Tracy and his proclivities.

This evidence supporting the judgment, balanced against the relatively weak evidence supporting a different outcome, weighs heavily in favor of the judgment. Although defendant, in his interview with police, denied having or attempting to have intercourse with Tracy and claimed that his oral and digital contact with Tracy's genitals was consensual, the jury nevertheless found him guilty on count 3 of attempted forcible rape. That finding demonstrates that the jury believed Tracy's version of the events at defendant's residence and rejected defendant's denial of any intercourse or attempted intercourse, as well as his claim that any sexual contact with Tracy was consensual. Because the forcible oral copulation and forcible sexual penetration counts were based on the same incident at defendant's residence as the attempted forcible rape count, there was no reasonable possibility that the jury would have found him guilty of the lesser crimes of nonforcible oral copulation and nonforcible sexual penetration, while at the same time

10

finding him guilty of attempted forcible rape. Having resolved the credibility issue in Tracy's favor, it is clear that that jurors likely would have found defendant guilty as charged on counts 1 and 2, even if they had been instructed on the purported lesser included offenses. Based on the strength of the evidence concerning defendant's use of force and the jury's rejection of defendant's claim that any sexual contact with Tracy was consensual, defendant cannot demonstrate the prejudice required for reversal.[6]

### B.      Restitution and Parole Revocation Fines

Defendant contends that the trial court mistakenly imposed restitution and parol revocation fines of $280 each, which amount was the statutory minimum under the versions of sections 1202.4 and 1202.45 in effect at the time he was sentenced in 2013. According to defendant, because the minimum statutory fine under both of those sections was $200 during the time period within which he committed the charged crimes— between September 2007 and September 2009—the trial court improperly sentenced defendant in violation of the ex post facto clauses of the Constitution.

The Attorney General concedes that the trial court was required to sentence defendant under the versions of sections 1202.4 and 1202.45 in effect during the time period within which defendant committed the charged crimes and agrees that the minimum statutory fine under both statutes during that time was $200, not $280. But the Attorney General nevertheless contends that defendant forfeited this issue by failing to object in the trial court. We agree with the Attorney General.

The Supreme Court in *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265 explained the basis for the forfeiture rule as follows: "The forfeiture rule generally applies in all civil and criminal proceedings. [Citations.] The rule is designed to advance efficiency and deter gamesmanship. As we explained in *People v. Simon* (2001) 25 Cal.4th 1082 . . . : " " " "The purpose of the general doctrine of waiver [or forfeiture] is to

---

[6]      Because we have concluded that there was no error in connection with defendant's lesser included offenses contention or, in the alternative, that any such claimed error was harmless, we reject defendant's claim of ineffective assistance of counsel.

encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . .'" [Citation.] "'No procedural principle is more familiar to this Court than that a *constitutional* right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." . . .' [Citation.] [¶] 'The rationale for this rule was aptly explained in *Sommer v. Martin* (1921) 55 Cal.App. 603 at page 610 [204 P. 33] . . . : "'In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.'"' [Citation.]" (Fn. omitted; [citations].)' [Citation.]"

Although it is true that the forfeiture rule does not apply when a trial court imposes an unauthorized sentence (*People v. Scott* (1994) 9 Cal.4th 331, 354), that is not what occurred here. The parties agree that, under the versions of sections 1202.4 and 1202.45 in effect when defendant committed the charged crimes, the trial court had the discretion to impose fines in an amount between $200 and $10,000. Because the $280 fines imposed fell within that authorized range, the trial court had the discretion to impose them, and it was therefore incumbent upon defendant to object in the trial court and bring the alleged mistake to the court's attention. His failure to do so forfeits the claim on appeal. (*People v. Scott, supra,* 9 Cal.4th at p. 353 [the forfeiture doctrine "should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)

## DISPOSITION

The judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.